[L. A. No. 1107.   Department One.—November 25, 1903.]

## NEWPORT WHARF AND LUMBER COMPANY, Appellant, v. H. L. DREW et al., Respondents.

STATE HOSPITAL—BUILDING OF WARD—NOTICE OF MATERIALMEN—LIABILITY OF TRUSTEES—INTEREST AND COSTS.—The trustees of a state hospital, whose treasurer lawfully holds the custody of moneys due to a contractor for the building of a ward, do not, by joining in the answer of a bank which claimed title to the money by assignment from the contractor, become liable to interest and costs at the suit of materialmen, who by notice of their claims to a particular estimate were entitled thereto as against the bank, where no claim for interest was made in the complaint, and the trustees were enjoined from making payment to the bank, and they did not make any adverse claim to the money in litigation, but were willing to obey any order of the court in the action in relation thereto.

ID.—PAYMENT INTO COURT—DUTY OF PUBLIC TREASURER.—A public treasurer is not obliged, in case of conflicting claims to money in his hands, to pay it into court in order to avoid interest and costs. His office makes him trustee to hold the money until he can pay it out under lawful authority.

ID.—LIABILITY OF PUBLIC TRUSTEES—DISCRETION—GOOD FAITH.—The trustees of the state hospital are public officers, who are guardians of the public money belonging thereto. They have certain discretionary powers, and should not be made answerable for injury or errors of judgment when acting in good faith, within the scope of their authority, without malice, corruption, or sinister motives.

APPEAL from an order of the Superior Court of San Bernardino County granting a new trial. H. L. Campbell, Judge.

The facts are stated in the opinion and in 125 Cal. 585, therein cited.

John S. Chapman, and James G. Scarborough, for Appellant.

The trustees were liable for interest and costs because they did not pay the money into court and contested plaintiff's claim.  (Code Civ. Proc., sec. 386; Civ. Code secs. 1917, 3287; 3 Pomeroy's Equity Jurisprudence, secs. 1320, 1325; 16 Am. & Eng. Ency. of Law, 2d ed., 1012; 11 Am. & Eng. Ency. of Law, 2d ed. 477; *Pfister* v. *Wade,* 69 Cal. 133; *De Camp L. Co.* v. *Tolhurst,* 99 Cal. 631; *Brown* v. *Campbell,* 110 Cal. 644; *Converse* v. *Ware Sav. Bank,* 152 Mass. 407; *Bevier* v. *Shoomaker,* 29 How. Pr. 411; *Spring* v. *S. C. Ins. Co.,* 8 Wheat. 270-293; *Powers* v. *May,* 123 Cal. 147.)

Otis & Gregg, for Respondents.

Money held in a public treasury is held for the benefit of the party adjudged entitled thereto, and need not be paid into court, and the treasurer cannot be charged with interest until he has failed to pay it out as directed.  (*United States* v. *Curtis,* 100 U. S. 119.)  A trustee is not chargeable with more than he has received of the trust estate, unless there is gross negligence or willful default.  (*Osgood* v. *Franklin,* 2 Johns. Ch. 1;[1] *Wheeler* v. *Bolton,* 92 Cal. 159.)  Costs are not usually allowed against a public officer.  (5 Am. & Eng. Ency. of Plead. & Prac., pp. 152, 153.)

COOPER, C.—This case has been here before, and the facts are there fully stated, 125 Cal. 585.  It is a contest between plaintiff, arising by reason of material furnished and used in building a ward to the Southern California State Hospital, as to certain amounts that became due the contractor under the contract, and the Farmers' Exchange Bank, one of the defendants, to whom the contractors had assigned the installments in contest.

The other defendants are members of the board of trustees of the asylum.  The case originally involved the amount that became due to the contractors under the eighth estimate,

_____
[1] 7 Am. Dec. 513.

$2,814.75; the ninth estimate, $584.77; and the tenth estimate, $2,579.33.

It was held on the former appeal that the plaintiff, by virtue of a notice given to the trustees before payment became due, was entitled to the amount of the tenth estimate, but that the defendant bank had acquired title to the amount due under the eighth and ninth estimates, by virtue of prior assignment by the contractors. This became the law of the case, and is not here called in question. After the former appeal upon the case being remanded to the lower court, a new trial was had. Upon such trial the sole contest was as to whether or not plaintiff was entitled to interest upon the amount of the tenth estimate, from May 20, 1895, the day it gave notice to the trustees, to December 11, 1899, the day the trustees paid the money to the clerk of the court to abide the final result of the suit, the amount of such interest being $822.50. The court below found that the defendants, trustees, "have joined with, aided, and assisted the defendant bank in resisting and contesting plaintiff's claim in every stage of this case, and that they have never occupied the position of disinterested stakeholders until December 11, 1899," when they deposited with the clerk of the court the amount of the tenth estimate. The court, upon said finding, concluded that the plaintiff was entitled to a judgment against the trustees for the amount of said interest and for costs, and judgment was accordingly entered. Defendants made a motion for a new trial upon a statement of the case, and the court below was convinced that it was in error in giving judgment for such interest and costs, and made an order granting defendants, trustees, a new trial. This appeal is from the order so made, and the only question is as to the interest and costs for which judgment was given against said trustees.

We think the trustees were not liable for interest or costs, and that the court properly granted a new trial. The trustees are in charge of public moneys to be expended for lawful purposes, and as provided by statute for the care of the insane and inebriate wards of the state. In the course of their duties they let the contract for building the ward to the asylum in pursuance of the appropriation made by the legislature therefor. They were met by notices and conflicting

claims as to the eighth, ninth, and tenth estimates that had become due under the contract. The attorney for plaintiff appeared before the trustees and desired them to take some action as to the payment of the conflicting claims, so that the matter might be determined in court. The trustees referred the matter to their attorney, who advised them that the bank was entitled to all the moneys due under these estimates. They accordingly made an order that the money be paid to the bank.

Plaintiff immediately filed its complaint, in which it prayed that the trustees be enjoined and restrained from paying the money to any one until the rights of the plaintiff and of the bank to the money should be determined, and that it be adjudged that plaintiff is entitled to the same, and that the said trustees and their treasurer be directed to pay the same to plaintiff.

No claim as to interest was made in the complaint as so filed. The court thereupon, on plaintiff's request at the commencement of the case, granted an injunction directed to the trustees, commanding them, and each of them, to "refrain and desist from paying to any one any of the moneys due and unpaid from the said trustees upon their contract." This injunction was in force during all the time for which interest is claimed.

The defendants, trustees, joined with the defendant bank in the answer to the complaint,—that is, the answer was made by defendant as a joint answer signed by "Attorneys for defendants." But in this answer nothing was claimed by the trustees in addition to the rights claimed by the bank under the assignments. The trustees did not claim the money, nor any adverse interest in it. It does not appear that they aided or assisted the bank in any other way than by joining in said answer.

After the action was commenced, and before the second trial, the term of the trustees who were such at the first trial had expired, and the present trustees had been appointed, and had qualified and assumed office. The present trustees, in December, 1899, filed an amended and supplemental answer, setting forth the fact that the term of the trustees who were such when the action was commenced had expired, and the fact of

their own appointment. In this supplemental answer the trustees alleged that they did not claim, and never had claimed, any interest in the moneys in contest, and further alleged that they "are now and at all times have been ready and willing to obey any order of the court in the premises," and to pay the moneys to whichever of the parties the court should adjudge to be entitled thereto. At the second trial it was conceded by plaintiff's attorney in open court that the trustees in the matter of ordering the moneys paid to the bank were "acting as a board and deciding between two claimants to this money, without any feeling of bias or prejudice in favor or against one side or the other." The attorney further stated: "I will say that I do not intend to impugn their good faith; I don't intend to impugn the good faith of the trustees."

It is said in appellant's brief: "If they [the trustees] had deposited the money in court and disclaimed any interest in the money, or had merely disclaimed and expressed their willingness to pay the money over to whomsoever the court found was entitled to it, they would not have been liable for interest or costs." That is precisely what the present trustees did. The trustees who were such at the time of the first trial did not in express words disclaim any interest in the moneys, but they did not claim any interest therein. They joined with the bank in the answer, but the only question raised related to the title to the moneys as between the plaintiff and the bank. The bank could have raised all such questions without the necessity of the trustees joining in the answer. It would have been proper and better practice for the trustees in the first place to have disclaimed, and to have filed a separate answer; but as they did not do so, we do not think that for this reason alone they subjected themselves to interest and costs. It may have been, and probably was, the fault of their attorneys that such course was not taken. The moneys were kept in their possession by the express order of the court. If it had been paid into court, the plaintiff would not have been entitled to the possession of it any sooner, nor would it have been entitled to interest. The money was in the hands of the treasurer of the asylum. A public treasurer is not obliged, in case of conflicting claims to money in his hands, to pay it into court to avoid costs and interest. His office makes him

trustee to hold the money until he can pay it out under lawful authority.

The principle controlling this case is stated by the supreme court of the United States in *United States* v. *Denver,* 106 U. S. 536, where it was held that interest could not be recovered against the assistant paymaster of the United States. It is there said: "That principle is that where an officer of the government has money committed to his charge, with the duty of disbursing or paying it out, as occasion may arise, he cannot be charged with interest on such money until it is shown that he has failed to pay when such occasion required him to do so, or has failed to account when required by the government, or to pay over or transfer the money on some lawful order. The mere proof that the money was received by him raises no obligation to pay interest in the absence of some evidence of conversion or some refusal to respond to a lawful requirement." In this case there is no claim of a conversion. There is no claim of prejudice or hostile action by the trustees. It seems they were right as to the title to the moneys due under the eighth and ninth estimates. This court decided in favor of the plaintiff as to the tenth estimate. That decision they are ready and willing to obey. Public officers occupying the position of trustees are the guardians of the public money. They have certain discretionary powers, and should not be made answerable for any injury when acting in good faith within the scope of their authority and not influenced by malice, corruption, or sinister motives. They should not be punished for errors of judgment when their motives are pure and untainted with fraud or malice or willful wrong.

It follows that the order should be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order is affirmed.        Angellotti, J., Shaw, J., Van Dyke, J.