No. 17,880.

Colorado Racing Commission, et al. *v.* Brush Racing Association, Inc.

(316 P. [2d] 582)

Decided October 14, 1957.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mrs. Patricia H. Maloy, Assistant, for plaintiffs in error.

Mr. William B. Paynter, Mr. Richard B. Paynter, for defendant in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

ON November 5, 1951, there was filed in the District Court of Arapahoe County a complaint wherein Centennial Turf Club, Inc., Mile High Kennel Club, Inc., Rocky Mountain Kennel Club, Inc., Pueblo Kennel Association and Brush Racing Association, Inc., were plaintiffs and Colorado Racing Commission and Earl E. Ewing, Treasurer of the State of Colorado, were defendants. The plaintiffs sought a declaratory judgment and requested the District Court to judicially determine two specific questions set forth in the prayer:

Par. 1. Does Sec. 11, Chap. 207, 1949 Session Laws provide that the "breakage" at plaintiff's tracks belongs to plaintiffs or does it provide that said "breakage" belongs to the State of Colorado?

Par. 2. Are the plaintiffs entitled to receive back from the State Treasurer the breakage heretofore paid by plaintiffs, *under protest,* to the State Treasurer?

On December 6, 1951, defendants filed their motion to dismiss the complaint for the reason that it did not state a claim against defendants upon which relief could be granted. On December 12, 1951, the plaintiffs filed their amended complaint which does not differ substantially from the original. On March 31, 1953, defendants' motion to dismiss (directed to the original complaint) was overruled and defendants granted time and until April 20, 1953, to file their answer.

On April 18, 1953, defendants filed their answer setting up two defenses:

1. The amended complaint does not state a claim upon which relief can be granted.

2. Deny that it is to the best interests of plaintiffs and defendants that their respective rights under said Sec. 11, Chap. 207, Session Laws 1949 be judicially determined.

On May 18, 1953, pursuant to stipulation, the case was ordered dismissed, with prejudice, as to Mile High Kennel Club, Inc. On May 22, 1953, pursuant to stipulation, the case was ordered dismissed, with prejudice, as to

Rocky Mountain Kennel Club, Inc. On May 26, 1953, pursuant to stipulation, the case was ordered dismissed with prejudice as to Pueblo Kennel Association. On May 26, 1953, the Centennial Turf Club, Inc. (hereinafter referred to as Centennial) and Brush Racing Association (hereinafter referred to as Brush) and the defendants (hereinafter referred to as the State) entered into a stipulation:

". . . that the above entitled cause be submitted to the Court upon the following proposition only:

That the controversy existing between plaintiffs and defendant Colorado Racing Commission with respect to Section 11 of Chapter 207, 1949 Session Laws of Colorado, as amended, and the construction thereof and the respective rights of the parties to the "breakage" be judicially determined under the provisions of Chapter 93, Article 10, 1953 Colorado Statutes Annotated, concerning declaratory judgments;

And that a determination by this Court with reference to Paragraph 2 of the prayer of said amended complaint be deferred at this time."

Upon trial of the above stated proposition the trial judge entered a declaratory judgment wherein it was judicially determined that all "breakage" belonged to the State of Colorado. The matter was presented to this Court for review by writ of error and on June 21, 1954, this Court reversed the judgment of the trial court and held that the "breakage" should be collected and retained by the licensees. *Centennial Turf Club, et al. v. Racing Commission, et al.*, 129 Colo. 529, 271 P. (2d) 1046.

The record before us does not disclose that any action other than as outlined above was taken in the case with reference to the second question (plaintiffs' right to receive back breakage paid to the State Treasurer under protest) until May 10, 1955, at which time Brush served notice on the State that it would on May 17, 1955, apply to the Court for a trial setting on the matters presented by Paragraph 2 of the prayer of its complaint. There is

nothing in the record to indicate that a trial setting was ever made; however, the record discloses that on December 19, 1955, the two remaining plaintiffs, Centennial and Brush, and the defendants were present in Court and apparently ready for trial on the question presented by Paragraph 2 of the prayer of the amended complaint:

"That the Court determine whether or not plaintiffs are entitled to receive back from defendant Earl E. Ewing, State Treasurer of Colorado, the said breakage *heretofore* paid under protest."

Prior to trial the State tendered for filing an amended answer setting forth the same matters set forth in its original answer and in addition two additional defenses:

(1) Plaintiffs' amended complaint does not state facts upon which relief can be granted.

(2) That on August 25, 1954, Centennial, pursuant to C.R.S. '53, 130-2-5, filed with the State its claim for all breakage theretofore paid and that on November 3, 1954, refund was made by the State in the amount of $67,693.40; that on September 20, 1954, Brush, pursuant to C.R.S. '53, 130-2-5, filed its claim for all breakage theretofore paid and that on November 3, 1954, refund was made in the amount of $7,902.15.

Said answer also contains the following:

"That said statute (130-2-5 supra) is a bar to any further claims by or on behalf of said plaintiffs."

Permission to file this amended answer was denied on the ground that it came too late. Testimony was taken and the evidence conclusively showed the following payments of breakage, all made *under protest:*

|      | Centennial   | Brush       |
|------|--------------|-------------|
| 1949 | ——           | $3,178.90   |
| 1950 | $134,837.55  | $2,328.10   |
| 1951 | $154,211.50  | $4,789.65   |
| 1952 | $177,381.00  | $5,691.85   |
| 1953 | $171,867.20  | $6,095.95   |
|      | $638,297.25  | $22,084.45  |

During the taking of testimony, Centennial admitted that the State had refunded to it $67,693.40 of the above total leaving a balance not refunded of $570,603.85.

On December 19, 1955, the trial Court found the issues in favor of plaintiffs; found plaintiffs were entitled to receive back from defendant Ewing the breakage paid in less refunds made; that all breakage had been paid under protest; that payments made under written protest were in fact claims for refunds; that payments made were involuntary and the result of an erroneous rule of the Racing Commission which compelled payments. Judgment was entered against defendants and in favor of Centennial for $570,603.85 and in favor of Brush for $22,084.45.

On February 2, 1956, Centennial filed in the trial Court Certificate of Satisfaction of its judgment and the record indicates that satisfaction was entered for the reason:

"That it would be to the benefit of the shareholders of the Corporation and to the people of the State of Colorado to forego the collection of said Judgment."

The State brings to this Court by writ of error and for review the question of the correctness of the judgment in favor of Brush.

No one disputes the fact that during the years 1949-1950-1951-1952-1953 Brush Racing Association paid under protest to the State of Colorado "breakage" in the total amount of $22,084.45; that money rightfully belonged to Brush and not the State and it has never been refunded.

The State assigns four reasons for reversal of the judgment and urges the same reasons for its conclusion that Brush should not get its money back:

1. The declaratory judgment entered by the trial Court and reversed by the Supreme Court, *Centennial v. Racing Commission,* supra, does not constitute consent on the part of the sovereign State of Colorado to be sued.

2. Payments made to the State were all voluntary, not under duress, and therefore cannot be recovered.

3. No fund exists from which the judgment entered herein can be paid.

4. Refusal of permission to file amended answer.

■ Counsel for the State vigorously urge the doctrine that Colorado cannot be sued in its sovereign capacity, that the State enjoys sovereign immunity from suit, and cite numerous decisions of this Court so holding. The cases relied upon are outmoded by more recent pronouncements of this Court. In Colorado "sovereign immunity" may be a proper subject for discussion by students of mythology but finds no haven or refuge in this Court. *Boxberger v. Highway Dept.,* 126 Colo. 438, 250 P. (2d) 1007 is squarely in point and is a complete answer to the State's archaic contention. In the Boxberger case the State acquired, without any right thereto, a portion of plaintiff's lands; in this case the State acquired, without any right thereto, a portion of plaintiff's money. The following language from the Boxberger case is applicable in this case:

"Our courts are to decide the rights of citizens, whether it be between themselves or between them and the government. It is with pride that we say, and it is freely known to every citizen, that our courts respond immediately to rescue a citizen from those holding him under asserted governmental authority and to give him relief as against the sovereign power if the circumstances warrant. This judicial power is conferred by the same constitutional provision and we see no reason to invoke a different doctrine as to remedy for the citizen whose property is wrongfully held by the sovereign or any other source of imposition. *The rights of a citizen remain the same whether they collide with an individual or the government,* and judicial tribunals were wisely established to correct such matters without the individual being relegated to the position of no other remedy except to appeal to a legislature, maybe to no

avail, as all the people, or the citizens, are, in fact, the sovereign under our desirable form of government. When a citizen resorts to our courts having jurisdiction, and has alleged his right to property, he owes deference to no power that would seek to prevent him from having the ear of the court in praying for an enforcement of a right."

The Boxberger case is followed and cited in *State Highway Dept. v. Dawson,* 126 Colo. 490, 253 P. (2d) 593.

We direct the attention of those seeking further enlightenment on the doctrine of sovereign immunity in Colorado to our most recent pronouncements in *Ace Flying Service, Inc. v. Colorado Department of Agriculture, et al.* 136 Colo. 19, 314 P. (2d) 278.

The next contention of the State is that the payments were made voluntarily and cannot be recovered. Every payment made was made by check and transmitted by letter with the following notation:

"The above amount of breakage is paid under protest, as we believe under the law the breakage should go to the track."

Testimony of the Secretary of the Racing Commission shows without contradiction that:

"The Commission always did insist on payment of breakage * * * and in fact they had a representative down at the race track checking each day, checking the amount of breakage * * * and insisting the breakage went to the state * * * as a matter of fact * * * the Racing Commission had a rule that breakage be remitted to the Racing Commission by noon of the next day after the close of each race * * * ."

The trial Court found:

"The payment of the breakage by plaintiffs was involuntary and the result of an erroneous rule of the Colorado Racing Commission which compelled plaintiffs to pay the same under duress."

This finding is well supported by the record before us and it is difficult indeed to find any basis for

the contention of the State that the payments were voluntary and therefore not recoverable. The Attorney General cites as authority for his contentions *Peterson v. McNichols,* 128 Colo. 137, 260 P. (2d) 938. We find nothing in that case which even tends to support him and find much to sustain plaintiffs' claim. We quote therefrom:

"In conclusion we emphasize that in private business, between individuals, if money is paid under a mistake of fact or law, the right to the return of such money is nowhere denied. A municipality is not exempt from the same rule, and why it should seek the application of a different rule is not understandable."

The above language directed to the City of Denver is equally applicable to the State of Colorado. See also *Davis v. Denver,* 120 Colo. 186, 207 P. (2d) 1185. We quote with approval the following language from the opinion of Justices Hilliard and Moore and which language fits the facts before us:

"The history of the controversy reveals that from the time of the passage of the ordinance we have declared to be void, there was active protest against it by many small coal dealers, including those here, and although plaintiffs in error were not parties therein, a suit in challenge of its validity was immediately instituted in the district court. The city was a party thereto, and its officials were aware thereof and had active part in the litigation from its inception. How better, we venture to inquire, could those in interest have made protest against the inequitable and unjust ordinance? We think of none. Why the city authorities should wish to retain license fees collected on an invalid ordinance, particularly in the circumstances here, is not understandable."

The third contention of the State is that no fund exists from which the judgment can be paid, therefore the judgment is invalid. Counsel's contentions and cases cited in support thereof are based entirely on the ancient

and time-worn doctrine of sovereign immunity which matter we have treated above.

The State's fourth point is without merit. The original answer was filed on April 18, 1953. On October 10, 1955, Brush served notice on the State of its intention to apply on October 17, 1955, for a trial setting. Apparently on October 17th the case was ordered set for trial on December 19, 1955, and not until the day of trial did the State tender for filing its amended answer. The trial judge refused the tender for the reason that it came too late. We find no abuse of discretion in so ruling. Even had the amended answer been filed in apt time the results would not be affected thereby. The refund of $7902.15 pled as a defense was a refund of the 1954 payment made by Brush as shown by "Brush Exhibit L" and has nothing to do with the recovery back of payments made for the years 1949-1953 covered by the judgment herein. The only other new matter in the amended answer tendered is that C.R.S. '53, 130-2-5 is a statute of limitations and a bar to recovery. We do not agree with this contention and even if we did counsel overlooks the fact that this action was filed in 1951 and the pendency thereof tolls the running of the statute.

Finding no error in the record before us, the judgment of the trial Court is affirmed.