[Sac. No. 7229. In Bank. Jan. 27, 1961.]

LOUISA C. MUSKOPF et al., Appellants, v. CORNING HOSPITAL DISTRICT, Respondent.

P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald M. Watt for Appellants.

Glenn D. Newton and William W. Coshow for Respondent.

Stanley Mosk, Attorney General, Charles A. Barrett, Assistant Attorney General, and Frederick G. Girard, Deputy Attorney General, Dion R. Holm, City Attorney (San Francisco), William F. Bourne and Beatrice Challiss, Deputy City Attorneys, Jennings, Engstrand & Henrikson and Paul D. Engstrand, Jr., as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—Plaintiff Louisa C. Muskopf was a paying patient in the Corning Memorial Hospital. She and her husband allege that because of the negligence of the hospital staff she fell and further injured the broken hip for which she was being treated. Defendant demurred on the ground that the Corning Hospital District is immune from liability for tort under the rule of *Talley* v. *Northern San Diego County Hospital District,* 41 Cal.2d 33 [257 P.2d 22], which held that a hospital district was a state agency exercising a governmental function and as such was immune from tort liability. Defendant's demurrer was sustained, and upon plaintiffs' refusal to amend the court entered judgment for defendant. Plaintiffs appeal.

Plaintiffs contend that operating a hospital is a proprietary function of government and that in any event the rule of governmental immunity should be discarded.

After a reevaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust.

The rule of hospital district tort immunity was based on

cases upholding county hospital immunity. (*Sherbourne* v. *Yuba County,* 21 Cal. 113, 114-115 [81 Am.Dec. 151] ; *Calkins* v. *Newton,* 36 Cal.App.2d 262, 264-268 [97 P.2d 523] ; *Griffin* v. *County of Colusa,* 44 Cal.App.2d 915, 919-922 [113 P.2d 270.) These cases rest on the grounds that a county, like the state, can act only in governmental capacity and that a hospital is protected by the rule of charitable immunity. The latter doctrine has been abolished in this state. (*Silva* v. *Providence Hospital,* 14 Cal.2d 762, 764-776 [97 P.2d 798] ; *Malloy* v. *Fong,* 37 Cal.2d 356, 364-367 [232 P.2d 241]), and it is now settled that the state, like a municipality, can act in a proprietary capacity. (*People* v. *Superior Court,* 29 Cal.2d 754, 761-762 [178 P.2d 1, 40 A.L.R.2d 919].) Subsequent to the Talley case, other decisions of this court have expanded the area of the state's proprietary activities. (*Guidi* v. *State,* 41 Cal.2d 623, 626-628 [262 P.2d 3] ; *Pianka* v. *State,* 46 Cal.2d 208, 210 [293 P.2d 458].)

The shifting fortune of the rule of governmental immunity as applied to hospitals is illustrative of the history of the rule itself. From the beginning there has been misstatement, confusion, and retraction. At the earliest common law the doctrine of ''sovereign immunity'' did not produce the harsh results it does today. It was a rule that allowed substantial relief. It began as the personal prerogative of the king, gained impetus from sixteenth century metaphysical concepts, may have been based on the misreading of an ancient maxim, and only rarely had the effect of completely denying compensation.[1] How it became in the United States the basis for a rule that the federal and state governments did not have to answer for their torts has been called ''one of the mysteries

---

[1]Sovereign immunity began with the personal prerogatives of the King of England. In the feudal structure the lord of the manor was not subject to suit in his own courts. (1 Pollock and Maitland, The History of English Law [1909 ed.] 518.) The king, the highest feudal lord, enjoyed the same protection: no court was above him. (1 Pollock and Maitland, The History of English Law, *supra,* at pp. 512-517; 3 Holdsworth, History of English Law [1922 ed.] 462.) Before the sixteenth century this right of the king was purely personal. (Watkins, The State as a Party Litigant 12 [Johns Hopkins University Studies in History and Political Science, Series XLV, No. 1 (1927)].) Only out of sixteenth century metaphysical concepts of the nature of the state did the king's personal prerogative become the sovereign immunity of the state. (Watkins, The State as a Party Litigant, *supra,* at p. 11; see 4 Holdsworth, The History of English Law, *supra,* at pp. 190-197.) There is some evidence that the original meaning of the pre-sixteenth century maxim—that the king can do no wrong—was merely that the king was not privileged to do wrong. (Borchard, *Governmental Responsibility in Tort,* 34 Yale L.J. 1, 2; Ehrlich, Proceedings Against the Crown (1216-1377)

of legal evolution." (Borchard, *Governmental Responsibility in Tort*, 34 Yale L.J., 1, 4.)

The rule of county or local district immunity did not originate with the concept of sovereign immunity. The first case to hold that local government units were not liable for tort was *Russell* v. *Men of Devon*, 100 Eng.Rep. 359. The case involved an action in tort against an unincorporated county. The action was disallowed on two grounds: since the group was unincorporated there was no fund out of which

at pp. 42, 127 [Oxford Studies in Social and Legal History, vol. VI (1921)].)

The immunity operated more as a lack of jurisdiction in the king's courts than as a denial of total relief. There was jurisdiction, however, in the Court of Exchequer for equitable relief against the crown. ". . . the party ought in this case to be relieved against the King, because the King is the fountain and head of justice and equity; and it shall not be presumed, that he will be defective in either. And it would derogate from the King's honour to imagine, that what is equity against a common person should not be equity against him." (*Per* Atkyns, B., *Pawlett* v. *Attorney General* (1668), Hadres 465, 468, 145 Eng.Rep. 550, 552; *Dyson* v. *Attorney-General* (1912), 1 K. B. 410, 415.)

The method for obtaining legal relief against the crown was the petition of right. The action could not be brought in the king's courts because of their lack of jurisdiction to hear claims against him. The petition of right stated a claim against the king, which was barred only by his prerogative. To the petition "there must always be a reply: 'Let right be done,'" (Holdsworth, *The History of Remedies Against The Crown*, 38 L.Quar.Rev. 141, 149) and ". . . it is clear that the petition has assumed the character of a definite legal remedy against the Crown." (*Id.* at p. 150.) There were procedural difficulties with the petition, but alternate remedies existed in large part. (*Id.* at pp. 156-161.)

The main use of the petition of right in the early common law was in real actions, which then covered a wide field. (Holdsworth, *Remedies Against The Crown, supra,* at p. 152.) The basic principle was that the petition was proper "whenever the subject could show a legal right to redress." (*Id.* at p. 156.)

The early precedents may even be read as allowing a petition of right against the king for the torts of his servants. (See the cases of Robert (1325) and Gervais (1349) de Clifton, discussed in Ehrlich, Proceedings Against The Crown, *supra,* at pp. 123-126; Watkins, The State as a Party Litigant, *supra,* at pp. 20 n. 36.) In *Tobin* v. *The Queen* (1864), 16 C.B.N.S. 309, 111 Eng. Com. Law Rep. 309, however, the court refused to so read the precedents, and held that the crown was not liable for the torts of its servants. This decision arose because of the formalistic and mistaken idea that concepts of vicarious liability did not apply to the crown. (See Holdsworth, *Remedies Against The Crown, supra,* at pp. 294-296; Watkins, The State as a Party Litigant, *supra,* at p. 25.) Under the Crown Proceedings Act, 1947, however, the crown is today liable for the torts of its servants to the same extent as private persons. (Hals. Laws of England, vol. XXXII, §§ 253 A, B [Cum. Sup. 1953].)

One other protection was afforded the subject injured by the king's servants. Many of the king's officers were liable for the wrongs committed, and from the earliest times those officers had to have a sufficient financial standing to make those remedies against them meaningful. (See Ehrlich, Proceedings Against The Crown, *supra,* at pp. 200, 214.)

the judgment could be paid; and "it is better that an individual should sustain an injury than that the public should suffer an inconvenience." (100 Eng. Rep. 359, 362.) The rule of the Russell case was first brought into this country by *Mower* v. *Leicester*, 9 Mass. 247, 249 [6 Am.Dec. 63]. There the county was incorporated, could sue and be sued, and there was a corporate fund out of which a judgment could be satisfied. Ignoring these differences, the Massachusetts court adopted the rule of the Russell case, which became the general American rule.

- If the reasons for *Russell* v. *Men of Devon* and the rule of county or local district immunity ever had any substance they have none today. ▉ Public convenience does not outweigh individual compensation, and a suit against a county hospital or hospital district is against an entity legally and financially capable of satisfying a judgment. Thus, it was judicially recognized in England over half a century ago that a public hospital is liable for its torts. (*Hillyer* v. *St. Bartholomew's Hospital* (1909), 2 K.B. 820, 825.)

⌐ ▉ The rule of governmental immunity for tort is an anachronism, without rational basis, and has existed only by the force of inertia. (See Borchard, *Governmental Responsibility for Tort*, 34 Yale L.J. 129, 229; Casner and Fuller, *Municipal Tort Liability in Operation*, 54 Harv. L. Rev. 437; Repko, *Commentary on Municipal Tort Liability*, 9 Law & Cont. Prob. 214.) It has been judicially abolished in other jurisdictions. (*Molitor* v. *Kaneland Community Unit District No. 302*, 18 Ill.2d 11 [163 N.E.2d 89, 90-96]; *Colorado Racing Com.* v. *Brush Racing Assn.*, 136 Colo. 279 [316 P.2d 582, 585-586]; *Hargrove* v. *Town of Cocoa Beach* (Fla.), 96 So.2d 130, 132-134 [60 A.L.R.2d 1193].)

None of the reasons for its continuance can withstand analysis. No one defends total governmental immunity. In fact, it does not exist. It has become riddled with exceptions, both legislative (Gov. Code, §§ 50140, 53051; Ed. Code, § 903; Veh. Code, § 17001) and judicial (*Chafor* v. *City of Long Beach*, 174 Cal. 478, 481-483 [163 P. 70, Ann.Cas. 1918D 106, L.R.A. 1917E 685]; *People* v. *Superior Court*, 29 Cal.2d 754, 761-762 [178 P.2d 1, 40 A.L.R.2d 919]), and the exceptions operate so illogically as to cause serious inequality. Some who are injured by governmental agencies can recover, others cannot: one injured while attending a community theater in a public park may recover (*Rhodes* v. *City of Palo Alto*, 100 Cal.App.2d 336, 341-342 [223 P.2d 639]), but one

injured in a children's playground may not (*Farrell* v. *City of Long Beach,* 132 Cal.App.2d 818, 819-820 [283 P.2d 296]); for torts committed in the course of a "governmental function" there is no liability, unless the tort be classified as a nuisance (*Phillips* v. *City of Pasadena,* 27 Cal.2d 104, 106 [162 P.2d 625]). The illogical and inequitable extreme is reached in this case: we are asked to affirm a rule that denies recovery to one injured in a county or hospital district hospital, although recovery may be had by one injured in a city and county hospital. (*Beard* v. *City & County of San Francisco,* 79 Cal.App.2d 753, 755-768 [180 P.2d 744].)

Article XX, section 6 of the California Constitution provides: "Suits may be brought against the State in such manner and in such courts as shall be directed by law." ▮▮▮ Health and Safety Code, section 32121, subdivision (b), provides that a hospital district shall have the power "To sue and be sued in all courts and places and in all actions and proceedings whatever." Since the Legislature has set forth the manner [all actions and proceedings] and the courts [all courts] in which suits against a hospital district may be brought it would seem to follow that in such suits judgment may be entered against the hospital district.

Previous cases, however, have differentiated between the state's consenting to be sued and its substantive liability, and have held that the language used in section 32121, subdivision (b), and in article XX, section 6, gives only the state's consent to be sued and does not waive any defenses or immunities. Thus, an 1893 statute (Stats. 1893, p. 57, now Gov. Code, § 641) providing that those having claims for negligence against the state were authorized "to bring suit thereon . . ." was held not to waive the state's sovereign immunity but only to give its consent to be sued when it was otherwise liable. (*Denning* v. *State,* 123 Cal. 316, 319 [55 P. 1000], citing *Chapman* v. *State,* 104 Cal. 690, 693 [38 P. 457, 43 Am.St. Rep. 158]; *Melvin* v. *State,* 121 Cal. 16, 23 [53 P. 416].)

▮▮▮ It is contended, however, that article XX, section 6, should be interpreted as also having substantive significance and establishing the rule of immunity. Such an interpretation would be contrary to *People* v. *Superior Court,* 29 Cal.2d 754, 761-762 [178 P.2d 1, 40 A.L.R.2d 919], *Guidi* v. *State,* 41 Cal. 2d 623, 626-628 [262 P.2d 3], and *Pianka* v. *State,* 46 Cal.2d 208, 210 [293 P.2d 458], which extended the state's liability to its proprietary activities. If the section has any substantive significance it would appear to be a waiver of immunity.

On its face it seems to say that the state may be held liable when suits are brought against it in accordance with a legislatively prescribed procedure. Consistent, however, with our previous construction of essentially identical statutory language, we hold that article XX, section 6, provides merely for a legislative consent to suit.

It is strenuously urged, however, that it is for the Legislature and not the courts to remove the existing governmental immunities. Two basic arguments are made to deny the court's power: first, that by enacting various statutes affecting immunity the Legislature has determined that no further change is to be made by the court; and second, that by the force of *stare decisis* the rule has become so firmly entrenched that only the Legislature can change it. Neither argument is persuasive.

The doctrine of governmental immunity was originally court made. The Legislature early adopted a statute allowing the state to "sue or be sued" (Gov. Code, § 641) and a similar statute applies to hospital districts (Health & Saf. Code, § 32121, subd. (b)). Although those statutes have been construed as providing only a waiver from suit and not a waiver of substantive immunity (*Melvin* v. *State*, 121 Cal. 16, 23 [53 P. 416]), their continuous reenactment indicates a clear legislative purpose to remove all procedural obstacles when the state is liable.

The state has also enacted various statutes waiving substantive immunity in certain areas. (Gov. Code, § 53051 [dangerous or defective condition of public property] ; Gov. Code, § 50140 [damage by mobs or riots] ; Ed. Code, § 903 [liability of school district] ; Veh. Code, § 17001 [public agency liability for negligent operation of motor vehicle].) Defendant contends that by removing immunity in these areas the Legislature has retained it in all others.

We are not here faced with a situation in which the Legislature has adopted an established judicial interpretation by repeated reenactment of a statute. (*Richfield Oil Corp.* v. *Public Utility Com.*, 54 Cal.2d 419, 430 [6 Cal.Rptr. 548, 354 P.2d 4].) Nor are we faced with a comprehensive legislative enactment designed to cover a field. What is before us is a series of sporadic statutes, each operating on a separate area of governmental immunity where its evil was felt most. Defendant would have us say that because the Legislature has removed governmental immunity in these areas we are powerless to remove it in others. We read the statutes as meaning only what they say: that in the areas indicated

there shall be no governmental immunity. They leave to the court whether it should adhere to its own rule of immunity in other areas.

Defendant also urges that even if the Legislature has not adopted the rule of governmental immunity in the areas in which it has not expressly abolished it, the rule has existed for so long that only the Legislature has the power to change it. The "rule" of governmental immunity, however, has not existed with the force that its repetition would imply. From its inception there has been constant judicial restriction, going hand in hand with accompanying legislative restriction. Municipal corporations were first held subject to the court's equitable jurisdiction (*Spring Valley Water Works* v. *City & County of San Francisco,* 82 Cal. 286, 307-311 [22 P. 910, 16 Am.St.Rep. 116, 6 L.R.A. 756]). They were then held liable for their proprietary acts (*Chafor* v. *City of Long Beach,* 174 Cal. 478, 481-483 [163 P. 70, Ann.Cas. 1918D 106, L.R.A. 1917E 685]), which have been constantly expanded. Thus, a community theater in a public park (*Rhodes* v. *City of Palo Alto,* 100 Cal.App.2d 336, 341-342 [223 P.2d 639]); a public golf course (*Plaza* v. *City of San Mateo,* 123 Cal.App.2d 103, 106-112 [266 P.2d 523]); an electric lighting plant (*Davoust* v. *City of Alameda,* 149 Cal. 69, 72-74 [84 P. 760, 9 Ann. Cas. 847, 5 L.R.A. N.S. 536]); and the furnishing of impure water (*Ritterbusch* v. *City of Pittsburg,* 205 Cal. 84, 86-88 [269 P. 930, 61 A.L.R. 448]), have all furnished the basis for municipal liability. Moreover, the concept of proprietary acts has been extended to the state and its agencies (*People* v. *Superior Court,* 29 Cal.2d 754, 761-762 [178 P.2d 1, 40 A.L.R. 2d 919]), and the liability of the state under that concept is increasing. (*Guidi* v. *State,* 41 Cal.2d 623, 626-628 [262 P.2d 3]; *Pianka* v. *State,* 46 Cal.2d 208, 210 [293 P.2d 458].) Finally, there is governmental liability for nuisances even when they involve governmental activity. (*Phillips* v. *City of Pasadena,* 27 Cal.2d 104, 106 [162 P.2d 625].)

In formulating "rules" and "exceptions" we are apt to forget that when there is negligence, the rule is liability, immunity is the exception. This court implemented that policy when it overruled the doctrine of charitable immunity. (*Silva* v. *Providence Hospital,* 14 Cal.2d 762, 764-776 [97 P.2d 798]; *Malloy* v. *Fong,* 37 Cal.2d 356, 364-367 [232 P.2d 241]), an immunity that was also claimed to be so firmly imbedded that only the Legislature could change it.

Abrogation of governmental immunity does not

mean that the state is liable for all harms that result from its activities. Both the state and individuals are free to engage in many activities that result in harm to others so long as such activities are not tortious. Thus the harm resulting from free competition among individuals is not actionable, nor is the harm resulting from the diversion of business by the state's relocation of a highway. (*People v. Symons,* 54 Cal.2d 855, 859 [9 Cal.Rptr. 363, 357 P.2d 451]; *Holloway v. Purcell,* 35 Cal.2d 220, 230 [217 P.2d 665].) It does not follow, however, that torts may not be committed in carrying on such activities. A competitor may be liable for the harm resulting from his violation of traffic laws in getting his product to market, just as the state may be liable for the harm caused by its agents' violation of such laws. Although it "is not a tort for Government to govern" (Jackson, J., dissenting in *Dalehite v. United States,* 346 U.S. 15, 57 [73 S.Ct. 956, 97 L.Ed. 1427]), and basic policy decisions of government within constitutional limitations are therefore necessarily nontortious, it does not follow that the state is immune from liability for the torts of its agents. These considerations are relevant to the question whether in any given case the state through its agents has committed a tort (see 3 Davis, Administrative Law (1958), § 25.11, p. 482; § 25.13, p. 489), but once it is determined that it has, it must meet its obligation therefor.

Nor does our decision herein affect the settled rules of immunity of government officials for acts within the scope of their authority. Moreover, since defendant's employees are not immune from liability for their negligence in caring for and treating plaintiff, the question of the extent to which the state should be immune when its officers are is not involved in this case. (See *Lipman v. Brisbane Elementary School Dist., post,* p. 224 [11 Cal.Rptr. 97, 359 P.2d 465].)

 Government officials are liable for the negligent performance of their ministerial duties (*Mock v. Santa Rosa,* 126 Cal. 330, 334 [58 P. 826]; *Payne v. Baehr,* 153 Cal. 441, 444 [95 P. 895]) but are not liable for their discretionary acts within the scope of their authority (*Downer v. Lent,* 6 Cal. 94, 95 [95 Am.Dec. 489]; *Newport Wharf & Lbr. Co. v. Drew,* 141 Cal. 103, 107-108 [74 P. 697.]; *Oppenheimer v. Arnold,* 99 Cal.App.2d 872, 874 [222 P.2d 940]; *Martelli v. Pollock,* 162 Cal.App.2d 655, 659-660 [328 P.2d 795]), even if it is alleged that they acted maliciously (*White v. Towers,* 37 Cal.2d 727, 730-732 [235 P.2d 209, 28 A.L.R.2d 636]; *Coverstone v. Davies,* 38 Cal.2d 315, 322 [239 P.2d 876];

*Hardy* v. *Vial,* 48 Cal.2d 577, 582-584 [311 P.2d 494] ). Such immunity is not designed to protect the guilty, for ''if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. . . . In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.'' (Learned Hand, J., in *Gregoire* v. *Biddle,* 177 F.2d 579, 581; see also *Hardy* v. *Vial,* 48 Cal.2d 577, 582-583 [311 P.2d 494].) Thus this immunity rests on grounds entirely independent of those that have been advanced to justify the immunity of the state from liability for torts for which its agents are admittedly liable.

Only the vestigial remains of such governmental immunity have survived; its requiem has long been foreshadowed. For years the process of erosion of governmental immunity has gone on unabated. The Legislature has contributed mightily to that erosion. The courts, by distinction and extension, have removed much of the force of the rule. Thus, in holding that the doctrine of governmental immunity for torts for which its agents are liable has no place in our law we make no startling break with the past but merely take the final step that carries to its conclusion an established legislative and judicial trend.

The judgment is reversed.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, J., Dissenting.—As recently as 1958 this court, in *Vater* v. *County of Glenn,* 49 Cal.2d 815, 820 [4] [323 P.2d 85] (*per* Chief Justice Gibson, with only Justice Carter dissenting), although it expressly recognized that there has been much learned criticism of the principle of governmental immunity, held that ''abrogation or restriction of this doctrine is primarily a legislative matter.'' And *Talley* v. *Northern San Diego County Hospital Dist.* (1953), 41 Cal.2d 33, 41 [15] [257 P.2d 22] (*per* Justice Shenk, with only Justice

Carter dissenting), upon facts materially identical with those of the present case, held that "Whether the doctrine of sovereign immunity should be modified in this state is a legislative question." Also this court, in denying petitions for hearing after decisions of the District Courts of Appeal, has during the last decade frequently adhered to this view.[1] But today's majority, apparently impatient with the Legislature's failure to act as speedily and comprehensively as they believe it should, usurp the legislative function, refuse reasonable respect for the doctrine of *stare decisis*, and sweepingly announce (*ante*, p. 213) that "After a reevaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust."[2]

Our state Constitution, the instrument which rules (or should rule) our decisions, provides (art. III, § 1), "The powers of the government of the State of California shall be divided into three separate departments—the legislative, executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted."

It appears that the Legislature specifically intended that a governmental unit such as the one sued here—a hospital district—should not be liable for the torts of its employes under the principle of *respondeat superior*. Since this court held in the Talley case (1953), *supra*, 41 Cal.2d 33, 40 [14], that substantive immunity was not abolished by subdivision (b) of section 32121 of the Health and Safety Code (which provides that hospital districts have power "To sue and be sued in all courts and places and in all actions and proceed-

---

[1] *County of Butte* v. *Superior Court* (1960), 178 Cal.App.2d 310, 311 [2 Cal.Rptr. 913] (hearing denied); *Ingram* v. *County of Glenn* (1960), 177 Cal.App.2d 649, 650 [1, 2] [2 Cal.Rptr. 304]; *Durst* v. *County of Colusa* (1958), 166 Cal.App.2d 623, 625 [1] [333 P.2d 789] (hearing denied); *Madison* v. *City & County of San Francisco* (1951), 106 Cal. App.2d 232, 244-245 [234 P.2d 995, 236 P.2d 141] (hearing denied); *Latham* v. *Santa Clara County Hospital* (1951), 104 Cal.App.2d 336, 337 [1] [231 P.2d 513] (hearing denied).

[2] The scope of this pronouncement is defined by the further statement (*ante*, p. 220) that "Nor does our decision herein affect the settled rules of immunity of government officials for acts within the scope of their authority. Moreover, since defendant's employees are not immune from liability for their negligence in caring for and treating plaintiff, the question of the extent to which the state should be immune when its officers are is not involved in this case. (See *Lipman* v. *Brisbane Elementary School Dist., post*, p. 224 [11 Cal.Rptr. 97, 359 P.2d 465].)"

ings whatever"), four amendments of section 32121 have become effective (Stats. 1949, ch. 964; Stats. 1951, ch. 536; Stats. 1953, ch. 1208; Stats. 1957, ch. 641) and several other sections concerning the powers of hospital districts have been amended or added, but the Legislature has refrained from providing for their tort liability in a situation such as that in Talley and the present case. (An even more direct example of legislative recognition of, and failure to abolish, governmental immunity is found in the Water Code sections considered in the Vater case (1958), *supra,* 49 Cal.2d 815, 818-819 [3].)

While this court was repeatedly holding that abolishment of governmental immunity was a legislative question, the Legislature enacted various statutes which reduced such immunity in certain fields but did not abolish it, and enacted and reenacted statutes which dealt with the related problem of suability of the government; therefore, it should be concluded that the Legislature agreed with this court that the questions should be resolved by statute rather than judicial decision. (See *Richfield Oil Corp.* v. *Public Util. Com.* (1960), 54 Cal.2d 419, 430 [2] [6 Cal.Rptr. 548, 354 P.2d 4].)

" '[I]n adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them.' [*Buckley* v. *Chadwick* (1955), 45 Cal.2d 183, 200 [14] (288 P.2d 12, 289 P. 2d 242).] The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in' other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended." (*Cole* v. *Rush* (1955), 45 Cal.2d 345, 355 [8, 9] [289 P.2d 450, 54 A.L.R.2d 1137].) Yet the majority refuse to apply the just quoted rules and say instead that the "continuous reenactment" of section 32121 (subd. (b)) indicates only "a clear legislative purpose to remove all procedural obstacles when the state is liable." (*Ante,* p. 218.) An informed refusal to respect either the doctrine of *stare decisis* or the constitutional division of powers seems manifest.

One of the grounds upon which the majority seek to justify their invasion of the legislative province is that statutory and judicial exceptions to the governmental immunity doctrine "operate so illogically as to cause serious inequality." (*Ante,* p. 216.) I had thought that the Legislature could abolish immunity in some areas and modify it in others, as it has

done, without judicial interference with its efforts, so long as the unevenness of the legislation was not so great as to be unconstitutional.

Furthermore, I am impelled to comment that it is unfortunate that a court's reversal of itself on a point of law which it has recently and repeatedly considered should appear to depend upon a change of personnel. A change of court personnel is not, in my concept of judicial duty (under our historic form of government), properly to be regarded as *carte blanche* for the judiciary to effectuate either a constitutional amendment or legislative enactment. Such power, I think, should be exercised only by the People or by representatives directly responsible to them.

Because I believe that the question of abolishing governmental immunity is for the Legislature, I would affirm the judgment.

McComb, J., concurred.

Respondent's petition for a rehearing was denied February 21, 1961. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.