Francis H. HOLLAND, Appellant,

v.

YELLOWSTONE PIPE LINE COMPANY, a corporation, Appellee.

No. 17483.

United States Court of Appeals Ninth Circuit.

June 26, 1962.

Rehearing Denied Aug. 7, 1962.

**622**

Richard J. Carstensen, Billings Mont., for appellant.

Lamey, Crowley, Kilbourne, Haughey, & Hanson, and Bruce R. Toole, Billings, Mont., for appellee.

Before POPE, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Yellowstone Pipe Line Company, the appellee herein, filed an action for damages in the United States District Court for the District of Montana, Billings Division, alleging that appellee's gasoline pipeline was struck and punctured by earth-moving equipment operated by Francis H. Holland, appellant herein, while Holland was engaged in highway construction on a state highway project north of Belgrade, Montana. In its first cause of action Yellowstone alleged that the damage to the pipe and the consequent loss of gasoline were proximately caused by the negligence of Holland. In Yellowstone's second cause of action it was alleged that Yellowstone was the owner and in possession of certain easements, that the pipeline was installed pursuant to said easements, and that Holland without Yellowstone's consent trespassed and entered upon the confines of Yellowstone's easement.

Holland's answer admitted that he had made a contract for the construction of the highway and that certain equipment operated by him struck and punctured appellee's pipeline at the point where it intersected and crossed the highway. However, Holland denied that he was negligent or that he trespassed upon Yellowstone's easements. He also alleged as affirmative defenses (1) that Yellowstone had been contributorily negligent; (2) that appellant was engaged in public work under a contract with the state of Montana, and that while performing such work he was entitled to share in the sovereign immunity of the state of Montana; and (3) that Yellowstone's damages were proximately caused by the negligence of the Montana Highway Commission.

The case was tried before the district court without a jury, and judgment was entered in favor of appellee in the sum of $18,330.20. Holland timely filed a notice of appeal. The district court had jurisdiction by reason of diversity of citizenship, 28 U.S.C.A. § 1332, the appellee being a corporation organized under the laws of Delaware and the appellant being a citizen of the state of Montana. This court has jurisdiction pursuant to 28 U.S.C.A. § 1291.

The district court found that appellant had knowledge of the existence of the pipeline, of its location laterally and of its elevation at the center line of the

highway project upon which appellant was working. It further found that appellant "was operating heavy road construction machinery along said highway in the vicinity of said pipeline when a piece of said machinery punctured said pipeline" and that the damage to the pipeline was the direct and proximate result of the negligence and careless conduct of the appellant.

Appellant contends that there was no evidence to support the court's finding of negligence and points to certain portions of the evidence to support this contention. Appellant's contract for the construction of the highway provided that the Highway Construction Engineers would furnish all necessary plans and working drawings. The place where the proposed highway crossed appellant's pipeline was shown thereon. A profile and cross-section in the plans show the elevation of the pipeline at the center line of the highway to be 59.8 feet.[1] The point of the break in the pipeline was not at the center line of the highway, but was to one side about 41½ feet from the center line. The testimony showed that by measurement after the accident the elevation of the top of the pipeline at the point of the break was approximately 61.66 feet. The plans nowhere showed the elevation of the pipeline 41½ feet from the center line. Appellant contends that he had a right to rely upon the pipe elevation figures contained on the profile and that he was not negligent when he cut the pipe at an elevation approximately two feet higher than the figures that appeared upon the profile. Other facts appearing from the testimony and exhibits at trial led the district court to reject these contentions.

The testimony showed that Ricketts, the project engineer for the Montana State Highway Department, went over the project with appellant's superintendent and physically pointed out the location of power lines, telephone line and appellee's pipeline. It was agreed between them "to stay two feet above the pipeline" in excavating and that when the roadway and a drain ditch nearby were ready for final digging "the pipeline would be dug and discovered." There was a four-foot high yellow iron post on each side of the roadway indicating that "a pipeline was present near them." Ricketts' daily diary of August 16 showed that he had talked to appellant's superintendent that day about appellee's pipeline, that they had agreed it was well marked and that he was not to excavate within two feet of the top of the pipeline. On August 21 Ricketts warned appellant about getting reckless around the pipeline. His recollection was that "they were swinging too far east and getting too close to the pipeline with their road equipment." Furthermore, it was contemplated that when the drain ditch and roadway were ready for bluetop the engineering crew or contractor would dig out and locate the pipeline, after which time the drain ditch could be graded accordingly.

One plan, a profile, of the proposed project prepared by the State Highway Commission of Montana showed the location of the pipeline crossing the project with the following writing thereon: "YELLOWSTONE PIPE LINE H. P. OIL X-ING—TOP OF PIPE ELEV. 4359.8 DO NOT DISTURB." The same profile design shows a drain ditch running parallel to the proposed road, and at the location where the pipeline crossed this road and drain ditch there appeared the following: "NOTE STA. 135+8— WARP DRAIN DITCH BOTTOM RT TO AVOID OIL LINE X-ING". The word "warp" was explained by Ricketts to mean that it is possible that the pipeline may not be where the elevation establishes it to be, thus making it necessary to change the grade of the bottom

1. The actual elevation figure was 4359.8, but for the sake of simplicity the first two digits have been omitted and will be omitted from all further references to elevation figures.

of a ditch to fit the pipeline. "In other words, warping means changing."

On August 24 Ricketts "re-warned the contractor about the Yellowstone Pipe Line." Ricketts testified that he discussed the matter several times with appellant's superintendent that they would get the roadway and drain ditch ready for bluetop "before we did any serious work in and around the vicinity of the pipeline itself so that we could expose the pipe and at the same time we were setting final grade we could make the necessary adjustment for the pipe." Ricketts assumed that the elevation of the top of the pipe was 59.8 feet and discussed this with appellant's superintendent. Ricketts stated that he had discussed with the superintendent that there was "possibly a variation in the elevation of that pipe and we had no idea how much it would be, but we were safe in assuming 59.8 was a close figure." He told him that "he wanted to be there any time they were in there around that pipe working."

On Monday, August 27, about 7:15 a. m., when it was quite foggy and before Ricketts arrived at this portion of the job, one of appellant's loaded scrapers hit the pipeline and broke it, causing a flow of gasoline in the area. When Ricketts arrived at the job where the break occurred some time after 8 a. m., Holland's foreman told him that due to the fog "he wasn't sure where he was at and then in the next second he told me he was told to be in this area."

On cross-examination Ricketts did state that at the time of the break appellant was doing nothing contrary to what was shown on the plans and specifications or on the stakes and that he (Ricketts) thought two feet of cover over the 59.8 feet, the assumed elevation of the top of the pipeline, would be sufficient for any warping that would be required. However, there was also testimony from other witnesses that it is common knowledge that pipeline elevations fluctuate with the topography. Furthermore, there was testimony that when pipelines come to a

structure such as a road they often make a change in grade and go down under the road.

A former superintendent of Yellowstone testified that the 10-inch pipe involved in this case could possibly make a "180° bend or a complete U-turn in 35 feet without causing the sides of the pipe * * * to appreciably deform," and that it is possible for pipelines to have considerable fluctuation in grade without violating any normal construction technique. Holland's superintendent testified that he had driven with Ricketts past the location of the pipeline and that Ricketts had told him to be careful "in connection with the construction or with the pipeline." Holland's superintendent further testified that his equipment started cutting over the pipeline five or six days before the accident, that the soil was a wet gravel subject to displacement by the heavy equipment working on it, that there was a hump of dirt over the location of the pipeline, that there was a puddle of water standing in the ditch near the hump, that part of the time they were actually working in water, that the agreement was that they were to stay two feet over the pipeline, and that Ricketts was constantly alerting them to the fact that the pipeline was there.

Section 19–103 of the Revised Code of Montana (1947) provides in part as follows:

"The words 'neglect,' 'negligence,' 'negligent,' and 'negligently' import a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns."

In his memorandum decision the district judge stated that the defendant Holland was only chargeable with the duty of exercising ordinary care. In addition, however, he stated:

"In determining whether ordinary care has been exercised in particular circumstances the nature, extent and

probability of apparent hazards in the conduct involved, the necessity and expedience of the course pursued, and the inconvenience, risk and expense of any available alternative action must be weighed and considered."

The court further stated:

"Defendant contractor knew he was working with heavy, bladed machinery near a high pressure gasoline pipe line. Obviously, violent rupture of the pipe line would present the possibility of extreme danger to life and property from explosion and fire. The contractor relied upon elevation figures given him by the state engineer without taking any measures to verify the data or otherwise determine the actual location and depth of the pipe line in its underground crossing of the road construction area. The relatively inconsequential time and expense of hand digging and probing was not ordered or expended to determine the depth of the pipe line at the point of highway crossing before blading into the earth at that point with heavy machinery. In view of the limited number of highway crossings of the pipe line throughout the entire project and the small amount of work necessary to accomplish reasonably adequate precautionary measures to avoid striking the pipe line, it appears to

this court that an ordinarily prudent contractor under the same or ·similar circumstances would have taken such measures and the failure to do so constituted negligence chargeable to defendant which directly and proximately caused the damages complained of."

■ In reviewing the judgment below we are guided by the rule that a district judge's findings of fact are not to be set aside unless clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

■■ We agree with the principles set forth in the court's memorandum decision, and we feel they adequately state the Montana law which is controlling. Moreover, we believe that the inference of negligence drawn by the court from the facts in the case is reasonable and is amply justified by those facts. In addition we hold that the finding of the district judge that Yellowstone was not contributorily negligent is not clearly erroneous.[2]

■ The district court did not consider it necessary to pass upon appellee's alternative cause of action based on trespass because of the finding that appellant was negligent. For the same reason the district court held that appellant's defense of sovereign immunity was inapplicable. We believe the action of the district court in this regard was proper.[3]

Judgment affirmed

2. Appellant claimed that appellee was contributorily negligent in that it had not installed its pipeline to the depth below the old road which had been agreed upon by appellee and the county which permitted the laying of the pipeline.

3. With respect to appellant's defense of sovereign immunity appellant quoted from 69 A.L.R. 490 as follows:

"One who contracts with a public body for the performance of public work is entitled to share immunity of the public body from liability for incidental injuries necessarily involved in the performance of the contract, where he is not guilty of negligence." [Emphasis added.]

The rule within which appellant seeks to come, then, applies, if at all, only to liabilities not based upon negligence. Thus, appellant, because he was found to be negligent, is expressly excluded from the class of persons with whom he seeks to identify himself. Nothing in the Montana law that has been cited to us indicates that the doctrine of sovereign immunity would be extended beyond the bounds of the above quoted statement. It would appear that the judicial trend is toward a contraction of rather than an extension of sovereign immunity. See, e. g., Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961).