[Civ. No. 19387. Third Dist. Apr. 30, 1981.]

NORMA F. BOSSI et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

David B. Mogilefsky for Plaintiffs and Appellants.

Richard G. Rypinski, Gordon I. Baca, Richard A. Wehe and George L. Cory for Defendant and Respondent.

OPINION

**CARR, J.**—Plaintiffs appeal from a judgment entered on a jury verdict for defendant State of California (hereafter State) and against plaintiffs in their action for damages for personal injuries sustained in a vehicle-pedestrian collision. For reasons which appear, the judgment is affirmed.

The collision occurred January 2, 1977, at about 12:15 p.m. on a steep and icy portion of State Route 267, just outside the Tahoe Basin. Plaintiffs' vehicle, driven by John Bossi, husband of Norma Bossi, was traveling northbound on State Route 267 over the Brockway Summit. It was snowing at the time and the Bossi vehicle was equipped with tire chains. As plaintiffs' vehicle descended the summit it suddenly slid across the highway, coming to rest diagonally in the southbound uphill lane. Moments later another vehicle came down the summit, slid out of control, following the same trajectory as the Bossi vehicle, and collided with the Bossi vehicle.

Norma Bossi walked over to the second vehicle, and while standing in the southbound lane of the highway was struck by a third vehicle which also slid out of control after cresting the summit, following the trajectory of the two preceding vehicles.

The Bossis sued the California Department of Transportation (Caltrans) for negligent highway maintenance, contending proper snow and ice control procedures had not been followed, resulting in a dangerous condition of public property. (Gov. Code, § 835.)

I

Plaintiffs initially challenge the validity of the jury verdict. A special verdict form was submitted to the jury for each plaintiff, which set forth, in pertinent part, the following interrogatories and directions:

"Question No. 1. Was State Route 267 in a dangerous condition at the location and time of the injury to plaintiff? If you have answered 'no' to Question No. 1, you shall not answer any further questions. If you have answered 'yes' to Question No. 1, then answer the next question. Question No. 2a. Was the dangerous condition created by a negligent or wrongful act or omission of an employee of the State of California? Question No. 2b. Did the State of California have actual or constructive notice of the dangerous condition a sufficient time prior to the injury to have taken measures to protect against the dangerous condition? If you have answered 'no' to Questions Nos. 2a and 2b, you shall not answer any further questions. If you have answered 'yes' to either Questions Nos. 2a or 2b, then answer the next question."

To question No. 1 the jury answered "Yes"; to question Nos. 2a and 2b the jury answered "no." At appellants' request, the jury was polled. Nine jurors said the verdicts read in open court were their verdicts, three said otherwise.

After the jury were discharged, and the verdict entered, plaintiffs moved for a new trial on the ground the verdicts were inherently invalid. In support of the motion, plaintiffs offered the declaration of one of the three dissenting jurors, to the effect that nine identical jurors did not vote in favor of all of the above three answers; that of the nine jurors who voted "no" to questions No. 2a and No. 2b. Three of them voted "yes" on question No. 1. The motion was denied.

Appellants assert the verdict and judgment thereon is inherently invalid and not legal, relying on *Borns* v. *Butts* (1979) 98 Cal.App.3d 208, 210 [159 Cal.Rptr. 400] and cases therein cited. Respondent contends 1) the attempted impeachment of the jury verdict is improper; 2) the right to a jury poll in each question in the special verdict form was waived by appellants' failure to request such a poll, and 3) the verdict is valid since the same nine jurors agreed on the questions necessary to sustain a defense verdict—whether the State was negligent or had notice of the alleged dangerous condition of the roadway.

We agree that appellants' attempted impeachment of the verdict is improper.

Section 1150, subdivision (a) of the Evidence Code provides: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions,

or events occurring, either within or without the jury room, *of such a character as is likely to have influenced the verdict improperly*. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined." (Italics added.)

The significant words are "of such a character as is likely to have influenced a verdict improperly...." While Evidence Code section 1150, subdivision (a) and *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132] have considerably broadened the rule of the admissibility of jurors' affidavits, there is preserved the distinction between proof of overt acts, objectively ascertained and proof of the subjective reasoning processes of individual jurors which can neither be corroborated nor disproved. The former is proper impeachment, the latter is not. ■ In the instant case, appellants seek to impugn the verdict which nine jurors in open court stated was their verdict by a conclusionary declaration of one juror. The declaration was not offered to demonstrate "improper influences" upon the jury verdicts but to attack the validity of the jury poll and to show the mental processes of the jurors. As such it was incompetent evidence to impeach the jury verdicts.

In *Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1029-1030 [98 Cal.Rptr. 187, 54 A.L.R.3d 250], upon a second polling of the jury, a vote of 10 to 2 in favor of the verdict was found. Plaintiff attempted to impeach the verdict with a declaration by one juror that three-fourths of the jurors were not in agreement with the verdict when they were called in to announce a verdict. In rejecting this declaration as inadmissible impeaching evidence, the court stated: "... In the present case the juror's declaration was inadmissible because it showed only her mental processes and those of her fellow jurors, and the subjective considerations which influenced her verdicts. [Citations omitted.] The subject declaration by only one juror purports to impeach the mental processes of her fellow jurors by the unsupported conclusionary statements that 'In truth, three-fourths of such jurors at that time were not in agreement as to a verdict in this action' .... *As already pointed out, the circumstances surrounding the return of the verdict are devoid of any coercion*." (Italics added.)

A similar result obtained in *Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal.App.3d 378 [94 Cal.Rptr. 887].

On appropriate motion, the declaration of juror John Brooks should have been stricken by the trial court. We therefore simply consider it incompetent to impeach the verdict and affirm the trial court.

■ Appellants' response to the contention of waiver is that Code of Civil Procedure section 618 does not specifically provide for a separate poll on each question when there is a special verdict form and counsel was unaware he had the right to request it. In *Silverhart* v. *Mount Zion Hospital, supra*, 20 Cal.App.3d 1022, the court noted at page 1029: "In considering plaintiff's contention, we first observe that no objection was made by plaintiff's counsel to the polling procedure at the time the jury was polled, nor did her counsel suggest that the jury be sent out again on the ground that more than one-fourth of the jurors disagreed with the verdict as returned. If plaintiff's counsel was not satisfied with the polling procedure, or if he believed that the jury was still confused, he should have complained immediately. Since any impropriety could have been cured if raised on time, the failure to object amounted to a waiver of the alleged impropriety or error. ..."

Appellants' effort to distinguish *Silverhart* as a general verdict and the instant case as a special verdict case is unavailing. Whether a general or special verdict, section 618, Code of Civil Procedure, places the burden on the party litigant to request a poll of all or any part of a verdict. The language of section 618 that "Either party may require the jury to be polled" compels this conclusion.

## II

■ Appellants' second point on appeal is that the trial court erred in refusing to submit to the jury an instruction pertaining to negligence per se. In their brief appellants state: "Plaintiffs requested the Court to instruct the jury on negligence *per se* for violation of a statutory duty (BAJI No. 3.45)." However, there is no indication in the record that BAJI No. 3.45 was submitted to the court. ■ Appellants did request BAJI No. 11.52, which instructs as to liability of a public entity for failure to discharge a mandatory duty, pursuant to section 815.6 of the Government Code. It was not error for the court to refuse that instruction.

An instruction regarding liability under section 815.6 of the Government Code is appropriate only if the public entity is under a *mandatory*

duty to perform an act.[1] The jury was instructed that: "It is the law of California, as enacted by the State Legislature, in Streets and Highways Code Section 91, that Caltrans has a duty to maintain the state highways." Section 27 of the Streets and Highways Code defines the meaning of "maintain" as used in section 91. Section 27 provides, inter alia, that: "The degree and type of maintenance for each highway, or portion thereof, shall be determined in the discretion of the authorities charged with the maintenance thereof, taking into consideration traffic requirements and moneys available therefor." By definition, highway maintenance involves considerable discretion. The department is not required by law to simultaneously repair every portion of highway under its jurisdiction. It must allocate its limited resources according to various priorities. Although it may be argued that in a general sense, the department is under a mandatory duty to improve and maintain the state highways, pursuant to section 91 (Sts. & Hy. Code), its statutory duty with respect to maintaining a specific location, at a given time, is discretionary under section 27. (Sts. & Hy. Code.) The court properly refused to instruct the jury as to liability under section 815.6 of the Government Code.

## III

■ Appellants contend the trial court erred by instructing the jury as to weather-immunity, as provided by Government Code section 831[2] and argue "the liability imposed under Government Code section 815.6 takes precedence over the immunity provisions of Government Code section 831" citing *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 917 [136 Cal.Rptr. 251, 559 P.2d 606]. *Morris* held when a public entity is under a mandatory duty to perform a specific function it may not

---

[1]Government Code, section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

[2]Government Code, section 831 provides: "Neither a public entity nor a public employee is liable for an injury caused by the effect on the use of streets and highways of weather conditions as such. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such effect if it would not be reasonably apparent to, and would not be anticipated by, a person exercising due care. For the purpose of this section, the effect on the use of streets and highways of weather conditions includes the effect of fog, wind, rain, flood, ice or snow but does not include physical damage to or deterioration of streets and highways resulting from weather conditions."

escape liability for its failure to perform that function by claiming statutory immunity. As we have indicated, sections 91 and 27 of the Streets and Highways Code do not set forth a mandatory duty to maintain a specific location at a given time. Unlike *Morris v. County of Marin, supra*, 18 Cal.3d 901, no such statutorily prescribed, mandatory duty applies to the facts of this case. The instruction as to weather-immunity is not objectionable under *Morris v. County of Marin, supra.*

■ Respondent contends that any error with respect to the instruction as to weather-immunity is moot because the jury never reached the issue. The jury was provided special verdict forms containing eight questions, with instructions directing the jury how to proceed after answering each question. The affirmative defense of weather-immunity (Gov. Code, § 831) was embodied in questions 4a and 4b. The jury never reached the issue because it found in favor of the State of California on questions 2a and 2b. After questions 2a and 2b were the following directions: "If you answer 'no' to Questions 2a and 2b you shall not answer any further questions. If you answered 'yes' to either Questions Nos. 2a or 2b, then answer the next question." In compliance with the directions, the jury did not proceed beyond questions 2a and 2b.

Respondent points out the reasoning of this court in *Murrell v. State of California* ex. rel. *Dept. Pub. Wks.* (1975) 47 Cal.App.3d 264, 271 [120 Cal.Rptr. 812], is appropriate here. *Murrell* arose out of a dangerous condition case in which both general and special verdict forms were submitted to the jury. The jury returned a verdict in favor of the defendant. On appeal, the plaintiff argued the court had erred in rejecting two of plaintiff's proposed instructions, and in giving a modified jury instruction on causation. We stated the following: "Plaintiff's attack on BAJI No. 379, as remodeled and given the jury, is an abstraction. This appeal, like others, illustrates the merit of special jury verdicts as aids to appellate review. Here the trial court submitted a special interrogatory to the jury; in response, the jury expressly found that the state highway had not been in a dangerous condition or, in equivalent terms, that the state had not been negligent. Thus the jurors were able to reach the general verdict without reference to the causation issue. If indeed BAJI No. 3.79 beckoned to error within the realm of causality, the jury did not enter the realm." (*Id.* at p. 271. Fn. omitted.)

We are satisfied that it was not error for the court to instruct with regard to section 831 of the Government Code; nevertheless the question is moot as the jury reached its verdict without entering the realm of weather-immunity.

## IV

At trial, appellants sought to introduce into evidence certain portions of two volumes of a maintenance manual published by Caltrans. Chapter XX of volume I, titled "Snow Removal and Ice Control," was admitted into evidence. Volume II contains 19 programs, one of which is titled "*10* program (Snow Removal and Ice Control)." The court excluded the "*10* Program" as irrelevant. Respondent had successfully argued that the "*10* Program" did not set forth a standard of conduct—as argued by appellants, but rather, it set forth standards or scheduling values solely for budgetary purposes. Appellants now contend the evidence was erroneously excluded.

If the manual serves a purpose other than providing budgetary guidelines for supervisorial personnel, the record fails to so indicate. In support of their respective contentions regarding the purpose of the "*10* Program*" both parties refer to the testimony of Elmo Meister, a retired deputy director of Caltrans. The testimony supports respondent's characterization, that the "*10* Program"establishes standards or values for budgetary purposes.[3]

---

[3]Pertinent excerpts of the direct examination of Mr. Meister by plaintiffs' counsel follows:

"Q. Is Chapter 20 of the Maintenance Manual the only published guideline for ice control?

"A. Chapter 20 is part of the Maintenance Manual and is the guideline dealing with snow removal and ice control.

"Q. Now, there are some other published guidelines, aren't there?

"A. In Caltrans?

"Q. Yes.

"A. For the application of materials and the procedures and policies?

"Q. Yes.

"A. I believe those are the only guidelines I know of. Up there it's snow and ice removal and ice control.

"Q. What's this book?

"A. That is the column two of the Maintenance Manual which deals with the maintenance management system.

"Q. Is it known as the Ten Program?

"A. Yes.

"Q. Could you turn out the Ten Program?

"A. Wait.

"Q. Do you have it?

"A. Yes.

"Q. What is the Ten Program about?

"A. The Ten Program is one of 19 programs for the maintenance management system and it deals with the establishment of standards or values for budgetary purposes.

"Q. And the Ten Program also sets work standards?

In their brief, appellants state that Mr. Meister identified the publication as setting forth "work standards." The characterization "work standards" is found in the following excerpt of the direct examination of Mr. Meister by appellants' counsel: "Q. What is the Ten Program about?

"A. The Ten Program is one of 19 programs for the maintenance management system and it deals with the establishment of standards or values for budgetary purposes.

"Q. And the Ten Program also sets work standards?

"A. (No response.)

"Q. What did you say?

"A. Yes. Right.

Although counsel's terminology was acceded to by the witness, the meaning of the words "work standards" was left unexplained and unexplored. The clear thrust of Mr. Meister's testimony supports the ground upon which the objection was sustained. There was no error.[4]

---

"A. (No response.)
"Q. What did you say?
"A. Yes. Right.
"Q. And what employees actually does the Ten Program get distributed to?
"A. Well, I thought that it went to the operators, but since—I've found it goes to the maintenance supervisors.
"Q. The supervisors get a copy of the Ten Program?
"A. Correct. And as I understand, copies are distributed to each maintenance station and are available to the operators." After a brief discussion, the "*10* Program" is marked for identification.
"Q. By Mr. Mogilefsky: Let me make sure I have got everything. What does this have to do with snow removal and ice control for Caltrans?
"A. It has the scheduling values or work standards.
"Q. It's a management tool?
"A. It's a management tool in the practices and procedure document.
"Q. What is its actual function?
"A. It's a statewide standard and the man-hours per mile. I believe that's how it's listed in there. It's used as a guide to the management people for their work efforts as far as man-hours are concerned. It can be used for all standards for all districts in the State."
[4]Furthermore, the excluded material is substantially similar to that contained in volume I, which was received into evidence.

V

Finally, appellants contend the court erred in not allowing them to introduce a prior inconsistent statement contained in a March 18, 1977, deposition of the driver of the vehicle which struck Norma Bossi.

The driver, Walter Rempfer, was not a party to the lawsuit, apparently having previously settled a separate lawsuit with Norma Bossi. At the time of trial Mr. Rempfer was residing in Idaho and not available to testify in person. Due to his anticipated unavailability for trial, a video-taped deposition of Mr. Rempfer was taken on October 20, 1979, in Reno, Nevada. This deposition was offered into evidence by appellants and shown to the jury. After presentation of the video-taped testimony, appellants offered evidence of a prior inconsistent statement contained in a deposition given by Mr. Rempfer in his capacity as defendant in the previous action brought by the Bossis.[5] Specifically, the statement sought to be introduced was one in which Mr. Rempfer said that he did not know if his truck had been hit from the rear. That statement was inconsistent with the subsequent video-taped testimony in which he stated he knew he was hit in the rear. ■ The court sustained respondent's objection to the admission of the prior inconsistent statement. We concur with the trial court that a proper foundation had not been laid.

Section 770 of the Evidence Code requires the exclusion of a prior inconsistent statement unless "the witness was so examined while testifying as to give him an opportunity to explain or deny the statement."[6]

At the second deposition, appellants' counsel was aware: (1) that Mr. Rempfer had made prior inconsistent statements; (2) that Mr. Rempfer would probably be unavailable at trial; (3) that he intended to introduce the video-taped testimony of the deposition of October 20, 1979; (4) that he intended to introduce inconsistent statements from the deposition of March 18, 1977. Appellants' counsel had ample opportunity to question the declarant with respect to the specific inconsistency, but intentionally omitted to do so despite opposing counsel's suggestion that he take advantage of the opportunity.

[5]State of California was not a party to that action.
[6]Unless the witness has not been excused from giving further testimony—a condition which obviously could not be met in this case.

The only opportunity given Mr. Rempfer to explain or deny the statement occurred when appellants' counsel handed him a copy of the 60-page transcript of the prior deposition. After Mr. Rempfer looked through the transcript, counsel asked: "Have you familiarized yourself with it?" Mr. Rempfer answered that he had read some of the questions. Counsel then asked, "Now, at that time and place, were all of these questions asked and all of these answers given?" Mr. Rempfer answered, "Oh, yes definitely." Appellants urge that no greater "opportunity" was provided the witness in *People* v. *Morgan* (1978) 87 Cal. App.3d 59 [150 Cal.Rptr. 712], yet the reviewing court in *Morgan* upheld the admission of certain inconsistent statements. We disagree. In *Morgan* the witness was asked if she had not made specific statements a few days before taking the stand. (Pp. 70-71.) In the case at bar, counsel's broad reference to a deposition of some length taken 18 months prior failed to provide Mr. Rempfer with a realistic opportunity to explain or deny any specific statement contained therein.

The judgment is affirmed.

Paras, Acting P. J., and Evans, J., concurred.