**STATE of Iowa, Appellee,**

v.

**Wayne Allen BERRY, Appellant.**

No. 94–1977.

Court of Appeals of Iowa.

March 27, 1996.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, and Dian Wilder, County Attorney.

Heard by SACKETT, P.J., and CADY and HUITINK, JJ.

CADY, Judge.

Wayne Berry appeals his judgment and sentences for second-degree murder and assault with intent to commit serious injury. He claims there was insufficient evidence to support the conviction for second-degree murder. He also asserts the trial court erred in refusing to permit him to impeach the testimony of a witness with a prior inconsistent statement. We affirm.

Around 7:00 p.m. on July 29, 1994, Wayne Berry stabbed John Kock in the chest with a knife. The stabbing took place in an alley behind an apartment house occupied by Kock in Marshalltown. Kock subsequently died and Berry was charged with first-degree murder and assault with intent to commit serious injury. Berry claimed he acted in self-defense.

The evidence at trial indicated Berry and Kock engaged in a heated telephone conversation shortly before the stabbing, which ended with Kock telling Berry to come over to the apartment. After the conversation, Kock hid the leg of a coffee table in the back of his pants and anxiously awaited Berry's arrival. Berry arrived at the apartment house a short time later in his automobile, marked by the sound of squealing tires.

Amber VanZee, the eighteen-year old daughter of a woman who lived in the apartment with Kock, witnessed the confrontation between Berry and Kock. As the two men approached each other, Kock had the table leg in hand and Berry displayed a knife. VanZee observed Berry stab Kock once in the chest while Kock held the table leg down at his side.

The apparent hostilities between Berry and Kock quickly ceased after the stabbing and Kock rather calmly asked "Wayne, why did you do that?" Kock then said "Come in and we can talk about this." Berry then helped Kock into the apartment. Kock initially asked Berry not to involve the police, but 911 assistance was eventually called after several attempts to call a doctor to the apartment failed. The first police officer to respond to the call observed Berry hurriedly leave in his car.

Berry drove to his home, then left a short time later in a different car. Berry drove to a friend's business, and parked the car some distance away. Berry's friend then drove Berry to a bar in Gladbrook, Iowa. Officers later arrested Berry at the bar.

Kock died from internal bleeding shortly after he was transported to the hospital. An autopsy revealed the stab wound lacerated

the right subclavian vein. Kock's clavicle bone was ninety percent severed, indicating the wound was forcefully inflicted.

Berry testified at trial Kock approached him outside the apartment and held the table leg in a threatening manner. Berry testified he stabbed Kock only after Kock dropped the table leg and displayed a knife he was carrying.

Berry also introduced evidence Kock told Berry's nephew approximately five weeks prior to the stabbing he intended to kill Berry. On rebuttal the State called nine witnesses, who opined Kock was a nonviolent person.

One of the State's character witnesses was Holly Harrelson, Kock's former girlfriend. On cross-examination, Berry's attorney attempted to impeach Harrelson with prior inconsistent statements from a victim impact statement she prepared as a part of a 1993 assault charge against Kock. Harrelson was shown the victim impact statement, and asked if she had stated in the report she was "in constant fear" of Kock. The prosecutor objected to the question on hearsay grounds, which the trial court sustained. Berry's counsel then offered the entire written document as an exhibit. The trial court sustained the prosecutor's "improper impeachment" objection, indicating the report contained "substantial extraneous and irrelevant material."

On appeal, Berry claims there was insufficient evidence to support the malice elements of second-degree murder. He also claims the trial court abused its discretion in refusing to permit him to impeach Harrelson with her prior inconsistent statements about Kock's character for violence.

## I. Insufficient Evidence

In resolving a claim of insufficient evidence, we review the record in the light most favorable to the State to determine whether a rational juror could find guilt beyond a reasonable doubt. *State v. Robinson*, 288 N.W.2d 337, 341 (Iowa 1980). All the evidence is considered, not just evidence which supports the verdict. *State v. Blair*, 347 N.W.2d 416, 419 (Iowa 1984).

Malice aforethought is an essential element of second-degree murder. *State v. Lee*, 494 N.W.2d 706, 707 (Iowa 1993). It is generally defined as "a fixed purpose or design to do some physical harm to another which exists prior to the act committed." *State v. Sharpe*, 304 N.W.2d 220, 226 (Iowa 1981). However, the fixed purpose is not required to exist for any given length of time. *State v. Love*, 302 N.W.2d 115, 119 (Iowa 1981). Moreover, it may be implied from prior relations between the accused and victim. *State v. Nunn*, 356 N.W.2d 601, 603 (Iowa App.1984).

We find sufficient evidence to support a finding of malice aforethought based on Berry's conduct before and after the stabbing, as well as the manner in which he used the knife. Berry's conduct before the stabbing indicated he was angry, and much of his conduct after the stabbing was inconsistent with his claim of self-defense. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (defendant's actions following shooting did not express an honest belief he acted in self-defense). Furthermore, there was ample evidence that the manner Berry used the knife indicated he intended to inflict death or serious injury. *See* Iowa Code § 702.7 (1993); *State v. Durham*, 323 N.W.2d 243, 245 (Iowa 1982).

## II. Impeachment

A witness may generally be impeached by evidence of a statement made on a prior occasion inconsistent with material testimony given at trial. Iowa R.Evid. 613; *State v. Frommelt*, 159 N.W.2d 532, 535 (Iowa 1968). The prior inconsistent statement constitutes hearsay, and is admissible only for impeachment. *Id.* It is admitted not to prove its truth, but to demonstrate the witness is not reliable. *Id.*

The acceptable procedure for impeachment by use of a prior inconsistent statement generally is to ask the witness if the prior statement was made, give its substance, identify the time and place of the statement, and identify the person to whom it was made. *See* John W. Strong, McCormick on Evidence § 37 (4th ed. 1992). If the

witness admits to making the prior statement, no further testimony is necessary and the impeachment is successful. *State v. Wolfe,* 316 N.W.2d 420, 422 (Iowa App.1981). If the statement is not admitted or specifically denied, however, extrinsic evidence of the statement is necessary to impeach. In this situation, the witness must also be given an opportunity to explain or deny the statement.[1] Iowa R.Evid. 613(b); *State v. Oshinbanjo,* 361 N.W.2d 318, 321–322 (Iowa App. 1984). The purpose of this further foundation is to avoid unfair surprise by giving the opposing counsel an opportunity to draw out an explanation from the witness on further examination, give the witness an opportunity to explain the apparent discrepancy, and save time. *United States v. Bibbs,* 564 F.2d 1165, 1169 (5th Cir.1977).

■ Extrinsic evidence of the prior inconsistent statement must also be authenticated if it is to be admitted into evidence. *N.L.R.B. v. Bakers of Paris, Inc.,* 929 F.2d 1427, 1436 n. 6 (9th Cir.1991). This requirement is in addition to the rule 613(b) foundational requirements. *See United States v. Stanfield,* 521 F.2d 1122, 1127 (9th Cir.1975).

■ We cannot conclude the trial court abused its discretion in failing to permit Berry's attorney to impeach Harrelson with the victim impact statement. Proper foundation required Berry to identify the specific place in the document where the prior statement was made so the witness could have a full opportunity to rebut or explain the statement. This was not done. *See Oshinbanjo,* 361 N.W.2d at 321–22. *See also Bossi v. State,* 174 Cal.Rptr. 93, 100, 119 Cal.App.3d 313 (1981) (proper foundation not established where attorney simply gave witness a transcript of his deposition and asked if all questions had been asked and answered).

■ Furthermore, we are unable to find Berry suffered prejudice by the trial court's ruling. *See Bauer v. Cole,* 467 N.W.2d 221, 225 (Iowa 1991) (no prejudice in trial court's ruling prohibiting the admission of exhibit containing alleged inconsistent statements). A review of the record reveals Harrelson admitted on direct examination that Kock assaulted her, and Berry was able to cross-examine her about the assault incident. *See United States v. Daniele,* 886 F.2d 1046, 1053 (8th Cir.1989). Thus, the jury was provided information to compare Harrelson's opinion concerning Kock's character for nonviolence with her statements of the assault incident in order to determine her reliability as a witness.

**AFFIRMED.**

1. Iowa R.Evid. 613(b) provides in part:
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.