Opinion
 

 McDANIEL, J.
 
 *
 

 Sanda Jovan Allyson (plaintiff) suffered serious personal injuries in a roadside, motor vehicle accident in the San Bernardino mountains during an early spring snowstorm. Plaintiff and her companion had been proceeding westbound (downhill) on State Route 38, leading away from the 8,200-foot Onyx Summit. It had been snowing heavily, and there is no dispute that the highway was covered with two to three inches of snow at the point noted where plaintiff and her companion were driving.
 

 The couple, looking to play in the snow, opted to pull off the highway and into a turnout located 1.4 miles east of the South Fork Campground. Soon after getting out of the Suzuki “Sidekick” in which she had been riding, plaintiff was standing in front of and to the west of the Suzuki. At that same time, Brett Wilson was driving his 1974 Chevrolet pickup truck westbound on the same highway. He lost control of his pickup as he drove down the hill toward where plaintiff and her companion had pulled off the road. As a result, the pickup started skidding off the traveled westbound lane of the highway. As it was skidding, the pickup collided with the Suzuki, pushing it into plaintiff. She was knocked down by the impact and thereby suffered the personal injuries noted.
 

 About three months after the accident, plaintiff caused to be filed with the State Board of Control a claim for $17 million. The claim was duly rejected and, about six months after filing the claim and about three months after it had been rejected, plaintiff filed suit against the State of California (acting by and through its Department of Transportation, i.e., CalTrans) and others.
 

 The theory of plaintiff’s action was that CalTrans, for all manner of reasons (see
 
 post),
 
 was responsible for the slippery and therefore dangerous condition of the highway. In responding to the complaint, as an affirmative defense, CalTrans pleaded the so-called weather immunity defense embodied in section 831 of the Government Code (see
 
 post).
 

 The matter was resolved in the trial court by summary judgment entered in favor of CalTrans. The operative, extrinsic facts were never in dispute. On these facts, the trial court concluded that plaintiff had not succeeded in
 
 *1307
 
 raising a triable issue of material fact with reference to the substantive aspects of the affirmative defense noted. Based on this determination, the motion for summary judgment was granted. In our view, the trial court correctly ruled on the motion; we shall affirm the judgment accordingly.
 

 Synopsis of Trial Court Proceedings
 

 As above noted, within the statutory time to do so and based on the facts above recited, plaintiff filed a claim for $17 million with the State Board of Control. In due course, the claim was rejected.
 

 Thereafter, also within the statutory time to do so, plaintiff filed an unverified complaint against CalTrans and others. Reflecting the recitals in her claim, plaintiff’s complaint alleged: “14. On or about April 1,1992, at or near the State Route 38, near Running Springs, County of San Bernardino, Plaintiff Sanda Jovan Allyson was a passenger in [a] 1989 Suzuki Sidekick driven by Carl Burnette. Mr. Burnette legally parked his vehicle completely inside a turn-out located on the west bound side of State Route 38, approximately 1.4 miles east of South Fork Campground. Plaintiff, who disembarked from the Suzuki, and was standing in front of the vehicle, was hit by the vehicle when it was struck from behind by a 1974 Chevrolet Pick-up being driven by Brett C. Wilson, who was out of control due to icy road conditions. Plaintiff was all times exercising due care for her own safety. [^Q 15. On April 1, 1992, the above-described State Route 38 was in a dangerous condition that created substantial risk of injury when the property was used with due care and/or in a manner that was reasonably foreseeable. The above-described portion of roadway was dangerous and unsafe as Defendants, and each of them, negligently failed to salt the subject roadway in order to prevent the accumulation and/or build-up of ice and other dangerous substances. [U 16. On April 1, 1992, Defendants, and each of them, failed to maintain the roadway by not posting signs directing and/or advising the use of chains, snow tires and/or other devices which facilitate traction in icy and inclement weather. [<]U 17. On April 1, 1992, Defendants, and each of them, failed to warn motorist[s] of the slippery and dangerous conditions of the subject roadway. 0D. . . [H 20. As a direct and proximate result of the acts, omissions and conduct of Defendants, and each of them, as herein alleged, Plaintiff Sanda Jovan Allyson was injured in her health, strength and activity, sustaining injuries to her body and shock and injury to her nervous system and person, all of which injuries have caused, and continue to cause, plaintiff great mental, physical and nervous pain and suffering. Plaintiff is informed and believed and thereon alleges that said injuries will result in some permanent disability to Plaintiff, all to Plaintiff’s damage in a sum within the jurisdiction of the Superior Court of the State of California pursuant to
 
 Code of Civil Procedure
 
 Section 425.10.”
 

 
 *1308
 
 CalTrans answered the unverified complaint with a general denial per section 431.30, subdivision (d) of the Code of Civil Procedure. The answer also contained 15 affirmative defenses, including the 12th which provided, “A proximate and contributing cause of the accident complained of in the complaint was the effect of weather conditions on the use of the highway referred to in the complaint at the time and place mentioned therein, and said effect of the weather conditions on the use of said highway would have been reasonably apparent to and anticipated by a person exercising due care. This defendant is therefore not liable pursuant to Government Code, Section 831.” Also included was the eighth, which invoked Government Code section 830.4.
 
 [1]
 

 With the case thus at issue, CalTrans noticed a motion for summary judgment. One of the grounds stated as the basis for the motion was “. . . that this defendant is immune from the liability alleged in the complaint under the provisions of Government Code § 831. . . .”
 

 As required by statute, CalTrans filed, in support of its motion, a separate statement of undisputed material facts. Such statement, without the recitation of the supporting evidence included recitals that: “1. Plaintiff Allyson left the Holiday Inn in San Bernardino to go skiing in the mountains with her boy friend. . . . ['JD 2. Plaintiff reports that enroute [sic] up hill it began snowing really, really hard[.]. . . [<¡0 3. Plaintiff Allyson and her driver turned their vehicle around and stopped by the side of the road facing downhill[.j. . . [^D 4. Plaintiff and her driver stopped by the side of the road to play in the snow. . . . [f] 5. There was snow on the road, approximately 2-3” deep on the roadway of the accident location[.]. - . [<JD 6. Driver Wilson whose pickup truck struck the Suzuki which was pushed into plaintiff, lost control of the truck when it began to slide toward the parked Suzukit.]”
 

 In further support of its motion, CalTrans filed copies of certain excerpts of plaintiff’s deposition taken February 10, 1994. Such testimony provided the evidentiary support for statements 1, 2, 3 and 4 above quoted. Also in support of its motion, CalTrans noted certain excerpts of the deposition of Brett Charles Wilson contained in exhibits “E,” “F” and “G” attached to
 
 *1309
 
 plaintiff’s arbitration brief.
 
 [2]
 
 Also in support of the motion, CalTrans noted exhibit “D” attached to plaintiff’s arbitration brief, consisting of the supplemental police report of the accident. These latter items provided the evidentiary support for statements 5 and 6 above quoted.
 

 After receipt of the notice of motion, plaintiff sought agreement by CalTrans to a continuance of hearing of the motion to enable further discovery. Under date of February 21, 1995, counsel for CalTrans wrote to counsel for plaintiff expressing an unwillingness to agree to a continuance for the purpose indicated.
 

 Thereupon, plaintiff filed opposition to the motion. In her statement in opposition to CalTrans’s separate statement of undisputed material facts,
 
 plaintiff admitted CalTrans’s statements
 
 1, 2, 3, 4, 5 and 6. In addition to the foregoing, plaintiff filed her own statements of fact. Such statements, without recitation of the supporting evidence, included: “1. Defendant owned, maintained and controlled the roadway (SR-38) on the date of the incident. . . . flu 2. Caltrans servicing SR-38 was placed on storm watch the night before the date of the accident. . . . [^Q 3. The storm in the vicinity of SR-38 on March 31 and April 1, 1992, brought snow and ice. . . . 4. It was snowing heavily at the time of the accident. . . . [f 5. The roadway (SR-38) was snowy and icy at the time of the accident. . . . [1 6. The roadway was in a dangerous condition on the date of the accident. . . . [<¡0 7. Snowplow operator Ronald W. Klaus stated that the particular stretch of highway on SR-38 where the accident occurred can become treacherous and it ices up. . . . [*]D 8. The purpose of spreading deicing chemical and/or abrasives for winter road maintenance is to ensure the road is safe and to maintain an orderly flow of traffic during adverse weather conditions. . . .
 
 [%
 
 9. Deicing chemical can be used to prevent the formation of ice films. . . . [U 10. Deicing chemical can be used to weaken the bond between the snow pack and road surface. . . . [<JD 11. Deicing chemical can be used to melt fresh snow as it falls. . . . [^Q 12. Deicing chemical can be used to melt compacted snow that remains after plowing. . . . HQ 13. The 1989 State of California Highway Maintenance Manual provides as follows: ‘When freezing conditions are anticipated, special patrols should be scheduled for the detection and correction of slippery conditions. Where ice, or frost causes slippery pavements, abrasives, chemicals or a combination thereof, may be applied to curves, intersections, grades and problem locations.’ ... [^ 14. Gary Boyd, Caltrans Maintenance Supervisor, admitted that his duties are governed by the 1989 State of California Maintenance
 
 *1310
 
 Manual. ... [^D 15. Gary Boyd admitted that no abrasives (cinders) or chemicals (salt) were applied to SR 38 on either March 31, 1992[,] or April 1, 1992, notwithstanding the known presence of ice and snow on the roadway. ... [*30 16. CalTrans records indicate that the last time prior to the incident in which salt was applied to SR 38 was on March 9, 1992, and cinders on March 25, 1992. ...[’]□ 17. The Winter Highway Condition Report for SR 38 regarding March 9, 1992, and April 1, 1992[,] and the Police Report indicate similar weather conditions. . . . [<30 18. Snowplow operator, Harold C. Runden, indicated that he would have expected SR 38 to have been salted and/or cindered on the date of the accident. . . . [<3Q 19. Ronald W. Klaus, the Heavy Equipment Operator responsible for the section of SR-38 where the incident occurred stated that on the date of incident he would have cindered the roadway. ...[']□ 20. CalTrans required chains on March 31, 1992[,] from 4:14 PM throughout the night on SR-38. . . . [TD 21. CalTrans required chains only intermittently on the date of the incident, April 1, 1992. . . . [<3Q 22. Defendant’s Highway Maintenance Manual mandates that ‘Chain control signs must be changed promptly as conditions warrant.’ ... HQ 23. Manned chain control trucks were dispatched to stop traffic going uphill to Big Bear and require
 
 [sic]
 
 chains, on the date of the accident. . . . [<3Q 24. No chain control trucks were dispatched to stop traffic from travelling downhill out of Big Bear and require [szc] chains, on the date of the accident. ... [*30 25. Snowplow operator, Harold C. Runden, testified that in his experience there have been a lot of accidents involving traffic coming downhill in icy conditions. . . . [<fl] 26. Snowplow operator, Harold C. Runden, testified that there are a lot of accidents because people from Big Bear come down without chains & the Highway Patrol does not usually enforce chain control at Big Bear. [U . . . [‘¡D 29. Snowplow operator, Harold C. Runden, testified that it is only acceptable to close the ‘Chains required’ signs when the pavement is black, meaning no ice on the road. . . . [H 30. Driver Brett Wilson testified that he reached the snow in Big Bear at about 11:00 on the date of the accident. . . . [f] 31. Chains were not required after 10:50 on the date of the accident for Camp Angeles.” (Original emphasis.)
 

 Referring again to plaintiff’s efforts to effect a continuance of hearing the motion for summary judgment, plaintiff applied to the court for an order directing such continuance. About two months earlier, the parties had been before the court in connection with a number of discovery motions plaintiff had initiated. The result was that all of such motions were referred to a referee for hearing and determination. In this regard, a continuance of the motion for summary judgment was granted to afford an opportunity for the referee to consider and determine plaintiff’s discovery motions as above noted.
 

 
 *1311
 
 Such consideration and determination were accomplished and a report thereof filed with the court about a month before hearing of the motion for summary judgment. There were five such motions: (1) to compel further responses to form interrogatories; (2) to compel attendance of a subpoenaed witness at his deposition; (3) to compel production of documents; (4) to establish admissions; and (5) to impose sanctions. The referee recommended that all five motions be denied. In his report, the referee observed, “6. These untimely discovery demands are invalid and required no response or objection from said defendant. The Court has not been cited to any nor could it find any statutory or case authority holding that failure to object to such untimely discovery demands in any way waives their invalidity. All of plaintiff’s motions are denied.”
 

 After the foregoing report was filed, the trial court entertained hearing of the motion for summary judgment. The court indicated that it would first consider the motion for summary judgment before ruling on the discovery motions. The court engaged in an extensive review of the respective positions of the parties, covering about four pages of the reporter’s transcript. The court then observed, “[ujnder the circumstances of Government Code 831 which provides moving Defendant with immunity for liability, that’s what it appears to this court at this time. We merely have some weather conditions—we have known snow in the road, the driver’s failure to heed the snow in the road, lost control, slid into a parked car at the side of the road in a pull out, car hit the Plaintiff, Plaintiff was injured. There’s an attempt to impute liability because of driving in the snow in that manner to be responsible to the People of the State of California for the fact the chains sign—chains only sign was not activated at that point in time. I can’t see how that equates, Counsel, to what the law is under 831 nor under the holdings of the three cases that you cited Flournoy, Callahan, and the other, Erfurt case. That’s the way I view it.” After extended colloquy, the court concluded, “[a]ll right. The Court finds this Government Code 831 grants immunity for public interest, streets and highway except where the resulting dangerous conditions quote, ‘would not be reasonably apparent to and would not be anticipated by a person exercising due care,’ end of quote. That’s in Government Code 831. Defendant has presented evidence showing the reasonably apparent nature of the dangerous condition caused by snow covering the highway. . . . HQ Plaintiff has not presented evidence raising a triable issue of fact on the question of the reasonably apparent nature of the danger or showing that the failure to open chain signs created a trap for reasonable persons under the facts scenario of this case, which is not an unusual fact scenario. This happens almost daily in the mountains whenever there is rain [sic]. Certainly it does not come within the ambit of . . .the three cases cited by counsel.”
 

 
 *1312
 
 Thereupon, the court ruled that the discovery motions were moot, except the motion for sanctions which was denied.
 

 At the conclusion of the hearing, a minute order was entered. Such order included a recital that, “court finds pursuant to Gov[.] Code 831 that the danger was open and apparent to any driver using due care and thus the immunity of the code applies to defendant. Judgment is entered for defendant, State of California.”
 

 A judgment reflecting the foregoing was later signed and filed. The judgment included a recitation that “. . . there is no triable issue of material fact as to said defendant’s alleged liability; and . . . said defendant is entitled to judgment against the plaintiff as a matter of law.” This appeal followed.
 

 Discussion
 

 In pursuing her appeal, plaintiff’s assignments of error take the form of declarative statements:
 

 “VI. The State Is Liable for Injury Caused to Allyson by a Dangerous Condition of Its Property. . . .
 

 “VII. There Is Substantial Evidence That State Route 38 Was in a Dangerous Condition at the Time of the Subject Accident. . . .
 

 “VIH. The Accident Was Proximately Caused by a Concealed Trap on the State’s Property. . . .
 

 “IX. The State Is Not Immune From Liability Under Government Code Section 831. . . .
 

 “X. There are Questions of Fact Which Should Properly Be Resolved by a Jury, Not the Court. . . .
 

 “XI. The Trial Court, in Order to Abide by the Provisions of Code of Civil Procedure Section 437c(h), Should Have Denied the Motion for Summary Judgment, Granted a Reasonable Continuance in Order for Allyson’s Motions to Compel to Have Been Ruled Upon, or Made Some Other Just Order. . . .”
 

 As we shall demonstrate, plaintiff’s view of the case and her attempt to marshal the authorities in support of such view generally fail to take into account the nature and extent of CalTrans’s duty to maintain state highways
 
 *1313
 
 and they specifically fail to take into account the extent of the immunity afforded CalTrans under section 831 of the Government Code.
 
 [3]
 

 As implied by the foregoing observation, this appeal imports the ever thorny issue of whether CalTrans, under bad weather conditions, has a continuing duty running to any given individual motorist to maintain state highways in such a manner as to prevent the onset of risk of a driving hazard to any individual motorist at any given time and place. That there is such a duty is essentially plaintiff’s position. That position, in light of the pertinent statutes, is legally untenable as well as practically unrealistic.
 

 Let us review the bidding, so to speak. Before
 
 Muskopf
 
 v.
 
 Corning Hospital Dist.
 
 (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], the government enjoyed complete immunity from tort liability. However, in
 
 Muskopf,
 
 the Supreme Court, responding to the persuasive, if not brilliant, legendary advocacy of Burton J. Goldstein, announced, “[a]fter a reevaluation of the rule of governmental immunity from tort liability[,] we have concluded that it must be discarded as mistaken and unjust.”
 
 (Id.
 
 at p. 213.) After two years of confusion, if not chaos, in this area of the law, the Legislature added division 3.6 to the Government Code. This division includes sections 810 through 895.8 which undertook to define and delimit those circumstances under which a governmental entity, including the state, could be held liable in tort.
 

 This series of statutes also includes section 815 which succinctly provides:
 
 “[e]xcept as otherwise provided by statute:
 
 ['JQ (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [*][] (b) The liability of a public entity established by this part (commencing with Section 814)
 
 is subject to any immunity of the public entity provided by statute,
 
 including this part, and is subject to any defenses that would be available to the public entity if it were a private person.” (Italics added.)
 

 The foregoing language is plain and unambiguous, i.e., there is no question but that government tort liability is wholly statutory. More particularly, the language noted is clearly intended to ensure that applicable immunity provisions of the Tort Claims Act will prevail over its liability provisions.
 

 Within this statutory scheme is the liability imposed by section 835. That section provides that
 
 “[e]xcept as provided by statute,
 
 a public entity is liable
 
 *1314
 
 for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [JO (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [JQ (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.” (Italics added.)
 

 The language of section 835 clearly implies the necessity for a breach of the duty of care by reason of which the foreseeable risk, alleged by a claimant, has been created or is suffered to continue. This factor leads to a scrutiny of the prescriptions governing that agency of the state, namely CalTrans, which is cognizable of those circumstances characterized by the facts of the case before us. CalTrans exists by reason of section 14000. In the statement of legislative intent contained in this section, the Legislature provided that “[a] goal of the state is to provide adequate, safe and efficient transportation facilities and services for the movement of people and goods at reasonable cost.” Section 14030 sets forth the powers and duties of CalTrans. These include the “[planning, designing, constructing, operating and maintaining of those transportation systems which the Legislature has made, or may make, the responsibility of the department.”
 
 (Id.,
 
 subd. (d).)
 

 The reference to “maintaining” in section 14030 carries the analysis over to the Streets and Highways Code. Section 91 of that code provides that “[t]he department shall improve and maintain the state highways, including all traversable highways which have been adopted or designed as state highways by the commission, as provided in this code.” Section 27 of the Streets and Highways Code defines “maintenance" as “(a) The preservation and keeping of rights-of-way, and each type of roadway, structure, safety convenience or device, planting, illumination equipment, and other facility, in the safe and usable condition to which it has been improved or constructed, but does not include reconstruction or other improvement. [<]D (b) Operation of special safety conveniences and devices, and illuminating equipment. [CJ[] (c) The special or emergency maintenance or repair necessitated by accidents or by storms or other weather conditions, slides, settlements, or other unusual or unexpected damage to a roadway, structure, or facility. [JQ The degree and type of maintenance for each highway, or portion thereof, shall be determined in the
 
 discretion
 
 of the authorities charged with the maintenance thereof, taking into consideration traffic requirements and moneys available therefor.” (Italics added.)
 

 
 *1315
 
 As above noted, plaintiff’s position is that CalTrans failed, i.e., breached its duty, to do a number of things which, plaintiff argues, created a dangerous condition of state property in the form of the icy road surface stretching approximately 500 feet downhill to the point at which the Chevrolet pickup collided with the Suzuki Sidekick.
 

 It requires no citation of authority to support the proposition that the determination of the presence of duty presents a question of law not fact. On this issue,
 
 Bossi
 
 v.
 
 State of California
 
 (1981) 119 Cal.App.3d 313 [174 Cal.Rptr. 93], discussed more fully
 
 (post),
 
 is instructive. In
 
 Bossi,
 
 also involving a pedestrian struck by a vehicle sliding out of control on an ice-covered stretch of state highway, the court observed, “[b]y definition, highway maintenance involves considerable discretion. The department is not required by law to simultaneously repair every portion of highway under its jurisdiction. . . . Although it may be argued that in a general sense, the department is under a mandatory duty to improve and maintain the state highways, pursuant to section 91 (Sts. & Hy. Code), its statutory duty with respect to maintaining a specific location, at a given time, is
 
 discretionary
 
 under section 27. (Sts. & Hy. Code).”
 
 (Id.
 
 at p. 320, italics added.)
 

 Reading the foregoing statutes in combination, particularly in light of the “discretion” referred to in section 27 of the Streets and Highways Code, shows it to be clear that CalTrans had no precisely mandated duty to perform any kind of maintenance at any time on this particular stretch of state highway leading down to the place where plaintiff suffered her personal injuries. This conclusion is of course reinforced by adding sections 830.4 and 831 to the statutory mix. The former has already been quoted in the margin in footnote 1. The latter provides, “[n]either a public entity nor a public employee is liable for an injury caused by the effect on the use of streets and highways of weather conditions as such. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such effect
 
 if it would not be reasonably apparent to, and would not be anticipated by, a person exercising due care.
 
 For the purpose of this section, the effect on the use of streets and highways of weather conditions includes the effect of fog, wind, rain, flood, ice or snow but does not include physical damage to or deterioration of streets and highways resulting from weather conditions.” (§831, italics added.)
 

 In our view, should there be a
 
 failure
 
 to establish the factual predicate necessary to
 
 preclude
 
 invoking the immunity provided for in section 831, such immunity would be rendered meaningless were we to accept plaintiff’s contention that CalTrans breached a duty to maintain State Route 38 at a
 
 *1316
 
 point 1.4 miles east of South Fork Campground on April 1, 1992, in such a way as to prevent the onset of a “dangerous” condition, thereby creating the proximate cause of plaintiff’s injuries. Because we must recognize the immunity recited in section 831
 
 (post),
 
 it is impossible to accept plaintiff’s contention, as above recited, on which her theory of liability rests.
 

 The foregoing reference to the factual predicate described in section 831 reminds us that we are here reviewing the propriety of a summary judgment. Such review, in the first instance, is guided by precise statutory prescriptions set forth in section 437c of the Code of Civil Procedure. Of key significance are subdivisions (o)(2) and (c) of section 437c.
 

 Code of Civil Procedure section 437c, subdivision (o)(2) provides in pertinent part, “[a] defendant. . . has met his or her burden of showing that [the plaintiff’s] cause of action has no merit if that party has shown . . . that there is a complete defense to that cause of action. Once the defendant. . . has met that burden, the burden shifts to the plaintiff ... to show that a triable issue of one or more material facts exists as to ... a defense thereto.”
 

 Code of Civil Procedure section 437c, subdivision (c) provides that, “[t]he motion for summary judgment
 
 shall be granted
 
 if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider
 
 all of the evidence set forth in the papers,
 
 except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.” (Italics added.)
 

 Under this prescription, the first step is an analysis of the pleadings, i.e., the complaint and answer, including any affirmative defenses it may contain. “The pleadings define the issues to be considered on a motion for summary judgment.”
 
 (Ferrari
 
 v.
 
 Grand Canyon Dories
 
 (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].)
 

 The next step in the analysis calls for an evaluation of CalTrans’s effort to meet the burden of showing that plaintiff’s cause of action has no merit or that there is a complete defense to it. This showing can also rely on filings by plaintiff in opposition.
 
 (Villa
 
 v.
 
 McFerren
 
 (1995) 35 Cal.App.4th 733,
 
 *1317
 
 743, 750-751 [41 Cal.Rptr.2d 719].) In any event, once a prima facie showing is made and hence the “burden” has been met, it shifts to the plaintiff to show that a triable issue of material fact exists within the framework of that fixed by the pleadings. (Code Civ. Proc., § 437c, subd. (o)(2).)
 

 Once the burden has shifted, it must next be determined if the filings in opposition succeeded in raising a triable issue of material fact. If they did, the motion must be denied; if they did not, the motion must be granted. (Code Civ. Proc., § 437c, subd. (c);
 
 River Bank America
 
 v.
 
 Diller
 
 (1995) 38 Cal.App.4th 1400, 1410-1411 [45 Cal.Rptr.2d 790].)
 

 As earlier noted, our review precisely mirrors what occurs in the trial court, i.e., we make a de novo evaluation which, after it be shown that there are no disputed issues of material facts, requires a legal determination of the moving party’s entitlement to judgment.
 
 (Jambazian
 
 v.
 
 Borden
 
 (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768].)
 

 In compliance with the foregoing, we turn to the first step of the system of analysis above fashioned, i.e., to define the issues framed by the pleadings. The gravamen of plaintiff’s complaint is that CalTrans’s supposed breach of duty was the proximate cause of her injuries. More particularly, her theory is that such breach took the form of a number of failures to do those things which, in her view, would have made the 500-foot downhill stretch of State Route 38,1.4 miles east of the South Fork Campground, less slippery and hence would have precluded Wilson’s Chevrolet pickup truck from skidding into the Suzuki Sidekick.
 

 In addition to its general denials of all allegations contained in the complaint, CalTrans interposed a number of affirmative defenses, including the availability of the so-called weather immunity defense contained in section 831 already quoted above. The key factual element to be established such as would
 
 prevent
 
 the immunity from attaching was whether the nature of the weather hazard
 
 “would not be reasonably apparent to,
 
 and would not be anticipated by, a person exercising due care.” (§831, italics added.) Thus, the dispositive issue framed by the pleadings was whether the circumstances surrounding the icy (dangerous) condition of the highway at the point in question failed to fulfill the mandate recited in the statute such as is necessary to prevent the weather immunity from attaching.
 

 The next step in the summary judgment analysis is to determine whether CalTrans’s filings in support of the motion were sufficient to provide the factual basis to make its affirmative defense available and thereby to shift
 
 *1318
 
 the burden to plaintiff to demonstrate a triable issue of material fact with reference thereto. CalTrans’s filings in support of its claim of immunity were brief but sufficient. Its six statements of undisputed material facts included a recital that “[t]here was snow on the road, approximately 2-3” deep on the roadway of the accident location.” The evidence of this was a copy of the police report of the accident. Moreover,
 
 it was admitted by plaintiff.
 

 Thus, under subdivision (o)(2) of section 437c, Code of Civil Procedure, the burden shifted to plaintiff to demonstrate, if she could, a triable issue of material fact as to whether the section 831 weather immunity defense would attach.
 

 Plaintiff’s filings in an effort to carry her burden were extensive. However, such filings manifested a palpable failure to understand the nature of the summary judgment procedure. None of plaintiff’s filings were even remotely addressed to the dispositive issue framed by the pleadings, i.e., whether the immunity provided for in section 831 was factually available. Plaintiff’s filings were all addressed to nonissues and were based on the fallacious theory that CalTrans had an unqualified duty
 
 to remedy
 
 the allegedly dangerous condition existing at the time of plaintiff’s injury on State Route 38 at the location in question.
 

 In any case, besides admitting the obvious presence of the two to three inches of snow on the highway, plaintiff offered no evidence to support a finding that this condition “would not be reasonably apparent to, and would not be anticipated by, a person exercising due care.” (§ 831.) As a result, because plaintiff failed to raise a triable issue of fact as to the availability of the weather immunity defense, CalTrans was freed from any duty to deal with State Route 38’s slippery surface. Thus, the trial court, under the mandate of subdivision (c) of section 437c of the Code of Civil Procedure,
 
 had no alternative but to grant the motion.
 
 In other words, in the language of subdivision (o)(2) of section 437c noted, CalTrans succeeded in showing “that there is a complete defense to th[e] cause of action.”
 

 Going beyond the narrow aspect of the weather immunity, as it operated to preclude the presence of duty, it is appropriate to address more extensively plaintiff’s mistaken concept of the extent of CalTrans’s duty in the face of the hazardous driving conditions at the time and place of plaintiff’s injuries. We have already established that CalTrans’s tort liability is wholly statutory and that any such liability is subject to any immunity provided by statute. In other words, the immunity provisions of the California Tort Claims Act will prevail over the liability provisions. Otherwise, the immunity provisions would be pointless.
 

 
 *1319
 
 The larger point to be made here is that the role of CalTrans, arising because of transitory conditions affecting road surface and highway safety,
 
 is discretionary not responsive to a mandatory duty.
 
 As noted in
 
 Foremost Dairies, Inc.
 
 v.
 
 State of California
 
 (1986) 190 Cal.App.3d 361 [232 Cal.Rptr. 71], “[i]n general, the CHP has the right, but not the duty, to direct traffic on state highways. Vehicle Code section 2410 states: ‘Members of the California Highway Patrol are authorized to direct traffic according to law, and, in the event of a fire or other emergency, or to expedite traffic or insure safety, may direct traffic as conditions may require notwithstanding the provisions of this code.’ The language of this statute is permissive rather than directive, and therefore imposes no duty on the CHP to act in any fashion, or to act at all. [Citations.]”
 
 (Id.
 
 at p. 365.)
 
 [4]
 

 So it is with CalTrans. Reference has already been made to
 
 Bossi
 
 v.
 
 State of California, supra,
 
 119 Cal.App.3d 313. In
 
 Bossi,
 
 the plaintiffs sustained personal injuries in a vehicle-pedestrian collision. “The collision occurred January 2, 1977, at about 12:15 p.m. on the steep and icy portion of State Route 267, just outside the Tahoe Basin. Plaintiffs’ vehicle, driven by John Bossi, husband of Norma Bossi, was traveling northbound on State Route 267 over the Brockway Summit. It was snowing at the time and the Bossi vehicle was equipped with tire chains. As plaintiffs’ vehicle descended the summit it suddenly slid across the highway, coming to rest diagonally in the southbound uphill lane. Moments later another vehicle came down the summit, slid out of control, following the same trajectory as the Bossi vehicle, and collided with the Bossi vehicle. [<][] Norma Bossi walked over to the second vehicle, and while standing in the southbound lane of the highway was struck by a third vehicle which also slid out of control after cresting the summit, following the trajectory of the two preceding vehicles. [<]Q The Bossis sued [CalTrans] for negligent highway maintenance, contending proper snow and ice control procedures had not been followed, resulting in a dangerous condition of public property. (Gov. Code, § 835.)”
 
 (Id.
 
 at p. 316.)
 

 In
 
 Bossi,
 
 judgment was entered for the state after the jury returned a verdict in the state’s favor. On appeal, the plaintiffs assigned as error the trial court’s refusal to give an instruction based on BAJI No. 11.52 which would have instructed as to liability of a public entity for failure to discharge a mandatory duty pursuant to section 815.6 . In holding that such refusal was not error, the
 
 Bossi
 
 court said, “[a]n instruction regarding liability under section 815.6 of the Government Code is appropriate only if the public entity
 
 *1320
 
 is under a
 
 mandatory
 
 duty to perform an act. [Fn. omitted.] The jury was instructed that: ‘It is the law of California, as enacted by the State Legislature, in Streets and Highways Code Section 91, that Caltrans has a duty to maintain the state highways.’ Section 27 of the Streets and Highways Code defines the meaning of ‘maintain’ as used in section 91. Section 27 provides, inter alia, that: ‘The degree and type of maintenance for each highway, or portion thereof, shall be determined in the discretion of the authorities charged with the maintenance thereof, taking into consideration traffic requirements and moneys available therefor.’ By definition, highway maintenance involves considerable discretion. The department is not required by law to simultaneously repair every portion of highway under its jurisdiction. It must allocate its limited resources according to various priorities. Although it may be argued that in a general sense, the department is under a mandatory duty to improve and maintain the state highways, pursuant to section 91 (Sts. & Hy. Code), its statutory duty with respect to maintaining a specific location, at a given time, is discretionary under section 27. (Sts. & Hy. Code.)”
 
 (Bossi
 
 v.
 
 State of California, supra,
 
 119 Cal.App.3d at pp. 319-320, original italics.)
 

 In any event, getting back to the specifics of this case, the weather immunity defense recognized in section 831 operated directly to bring a number of functions involving maintenance of state highways, when covered by snow and ice, under the
 
 discretionary umbrella
 
 provided for in section 27 of the Streets and Highways Code as commented upon in
 
 Bossi.
 
 Contrary to plaintiff’s contentions here, CalTrans never owed a duty to plaintiff to post any speed limit signs or to post any chain control signs on State Route 38; CalTrans never owed a duty to plaintiff to spread salt or cinders on that highway; CalTrans never owed a duty to plaintiff to remove snow from the roadway by plowing.
 

 In our synopsis of the trial court proceedings, set forth earlier perhaps tediously, we included a catalogue of 29 of plaintiff’s 34 additional statements of fact which she contended to the trial court bore on CalTrans’s alleged breach of duty. Our purpose in doing so was and is to leave no doubt in the reader’s mind concerning the nature and extent of our holding in this case. Each of the 29 “additional” facts cited by plaintiff was
 
 wholly irrelevant
 
 to disposition of the motion for summary judgment in the trial court.
 

 Under the statutes here analyzed and the decisions interpreted, it is clear beyond disputing, and we hold, regardless of the California Highway Maintenance Manual, relied on by plaintiff extensively in her separate statement of undisputed facts, that CalTrans,
 
 absent the qualification recited in section 831,
 
 has no duty running to any given individual motorist at any time to: (1) post speed limit signs, (2) establish chain control on icy sections of road,
 
 *1321
 
 (3) plow snow off state highways, (4) spread cinders and/or deicing chemicals on icy sections of road, or (5) post warnings of icy road conditions.
 

 Otherwise, despite plaintiff’s contention that it did, CalTrans’s failure to perform any of the foregoing maintenance functions did not create
 
 a trap
 
 as the court in
 
 Callahan
 
 v.
 
 City and County of San Francisco
 
 (1967) 249 Cal.App.2d 696 [57 Cal.Rptr. 639] characterized the circumstances there. Snow covering a highway does not create a trap of the kind occurring in
 
 Callahan.
 
 In this regard, we can do no better than rely again upon the trial court’s comments at the time the motion for summary judgment was argued. “We merely have some weather conditions—we have known snow in the road, the driver’s failure to heed the snow in the road, lost control, slid into a parked car at the side of the road in a pull out, car hit the Plaintiff, Plaintiff was injured. ... I can’t see how that [i.e. Caltrans’s alleged failure to erect the “Chains Only” sign] equates, Counsel, to what the law is under 831 nor under the holdings of the three cases that you cited, Flournoy, Callahan and the other, Erfurt case.”
 

 One other matter requires comment. In her final assignment of error, plaintiff contends that the trial court should have denied the motion for summary judgment pursuant to subdivision (h) of section 437c of the Code of Civil Procedure. That provision requires the trial court to order a continuance to afford the responding party an opportunity for further discovery. For plaintiff to make such a contention on this record is absurd, if not irresponsible. In our recap of the trial court proceedings, we have omitted much of the acrimonious squabbling between the parties over discovery. The bottom line, to indulge the cliché, is that plaintiff was accorded a continuance of hearing the motion to enable all of her pending discovery motions to be heard by a referee to which these matters were referred by the trial court. The proceedings relative to this referral have been recounted earlier in the opinion, including the ruling of the referee.
 

 Plaintiff has no basis for assigning error on this feature of the trial court proceedings. In this regard, we are constrained to observe that plaintiff’s entire discovery exercise was needless because it was focused on matters beyond the scope of the dispositive issue framed by the pleadings. More particularly, such focus derived from the mistaken notion that CalTrans had a duty to perform certain maintenance functions in connection with the winter weather conditions. We have already explained and we here emphasize, in view of the obvious weather conditions, that there was no such duty. In short, the material fact upon which the motion (and the appeal) can be disposed, i.e., the availability of the section 831 weather immunity, was simple and undisputed. Hence, none of the discovery plaintiff hoped to pursue had any relevance whatsoever.
 

 
 *1322
 
 Based on the foregoing analysis, we hold that CalTrans’s motion for summary judgment was properly granted.
 

 Disposition
 

 The judgment is affirmed. In our view, this comes perilously close to being a frivolous appeal.
 

 Richli, Acting P. J., and Ward, J., concurred.
 

 *
 

 Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
 

 [1]
 

 ‘A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code.” (Gov. Code, § 830.4.)
 

 [2]
 

 Before the motion for summary judgment was noticed, the entire dispute had been referred for arbitration, resulting in a decision in favor of CalTrans. Thereupon, plaintiff demanded a trial de novo.
 

 [3]
 

 All statutory references are to the Government Code unless otherwise specified.
 

 [4]
 

 In
 
 Foremost Dairies,
 
 smoke was obscuring the traffic on interstate 5 which led to a collision. An officer of the California Highway Patrol was at the spot of the smoke directing traffic.