**IN THE COURT OF APPEALS OF IOWA**

No. 14-1042
Filed December 9, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BOBBY JOE SNOW,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Wapello County, Lucy J. Gamon,

Judge.


        A defendant appeals his conviction for murder in the second degree.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik, Martha E. Trout,

and Laura Roan, Assistant Attorneys General, for appellee.



        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

An angry, late-night confrontation between Bobby Joe Snow and James McElroy turned deadly when Snow's punch fell McElroy, who struck his head on the pavement. Snow sped away from the scene, yelling out his car window to patrons of a nearby beer garden: "You better go check on James. I just dropped him." McElroy died. Snow stood trial for murder in the second degree.

On appeal, Snow challenges his conviction, alleging three grounds for reversal: (1) insufficient evidence, (2) an improper ruling on his motion for new trial, and (3) ineffective assistance of counsel concerning prior bad acts evidence. Viewing the record in the light most favorable to the State, we find substantial evidence to support the jury's verdict. We also reject Snow's claim the court erred in ruling the verdict was not contrary to the weight of the evidence. Finally, we preserve Snow's ineffective-assistance-of-counsel claim for possible postconviction-relief proceedings.

## I.    Background Facts and Proceedings

The events at issue in this appeal started on May 14, 2011, at the Touchdown tavern in Ottumwa. McElroy and his live-in girlfriend, Beverly Dawson, were out drinking with Dawson's daughter, Robyn Assell, and her boyfriend, Shannon Jameson. McElroy and Dawson called it a night around 10:30 p.m. and went to their home on South Fellows Street. Assell and Jameson moved on to Coconana's bar, which was located about a block from South Fellows Street.

In Coconana's beer garden, Jameson and Assell saw Assell's half-sister, Summer Dawn Hipshur, who was "freaking out" because Snow was also in the bar. Hipshur's reaction stemmed from a fight that occurred a few weeks earlier in the same bar when Snow had punched her "right between the eyes," resulting in Coconana's owners banning Snow from the premises. Because of the ban, on May 14, the owners told Snow to leave, which he did angrily. At the same time, Assell was returning to the bar on foot after walking Hipshur home. Jameson called Assell's cell phone to warn her to stay out of Snow's way because he was "driving crazy." Jameson left the bar to meet Assell and saw Snow strike her with his car.

In the meantime, McElroy received word of the uproar and walked out of his house toward Coconana's. McElroy spotted Snow's car and approached the driver's side window where the two men had an "aggravated" exchange. Snow then drove off, "gas pedal to the floorboard," into the alley. But a few seconds later, Snow came right back down the alley. McElroy again walked over to the driver's door; he and Snow were both yelling. McElroy slapped the top of the car, and Snow sped away again. Snow then made a u-turn and stopped on South Fellows.

During this third encounter, Snow stepped out of his car and punched McElroy, who "immediately hit the ground." A witness recalled McElroy went to his knees and then fell back, his head hitting the pavement in the middle of the road. McElroy was not in good shape: "[H]is nose was all messed up. His eyes were rolling in the back of his head, and he was fighting to breathe."

Snow "took off as fast as [his car] would go"—tires squealing. Snow drove past Coconana's beer garden, yelling out his window that he had just "dropped" McElroy. An ambulance picked up both Assell and McElroy. Assell was treated and released, but McElroy died from his severe head injury. The medical examiner estimated McElroy's blood alcohol content at the time of death would have been .13.

In an interview with police on May 15, Snow admitted grabbing McElroy by the shirt and striking him with a right hook to the chin. Snow held up his fists, telling the investigators they were his "trademark." Snow "laid out on the floor in the booking room" to demonstrate how McElroy "fell to his ass" and started "jerking or shaking" after he landed on the ground.

The State charged Snow with murder in the second degree, in violation of Iowa Code section 707.3 (2011). Snow filed a motion in limine seeking to exclude, among other things, any mention he had "allegedly assaulted Summer Dawn Hipshur in the weeks prior to May 15, 2011." At the motion hearing, the defense withdrew that request. His trial started on March 3, 2014, and concluded on March 10, 2014. The jurors deliberated for about two hours before returning their guilty verdict. The court denied Snow's motion for new trial and sentenced him to an indeterminate term of fifty years. Snow now appeals.

## II.     Scope and Standards of Review

We apply three different levels of review in this appeal. We examine Snow's challenge to the sufficiency of the evidence for correction of legal error. *See State v. Copenhaver*, 844 N.W.2d 442, 449 (Iowa 2014). We consider the

court's ruling on his motion for new trial under an abuse-of-discretion standard. *See State v. Thompson*, 836 N.W.2d 470, 491 (Iowa 2013). Finally, his claims regarding his trial attorney's performance receive de novo review because they involve his constitutional right to effective assistance of counsel. *See State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015).

## III. Analysis of Snow's Challenges

### A. Sufficiency of the evidence

We first address Snow's challenges to the sufficiency of the evidence. The jury's verdict is binding on appeal if supported by substantial evidence. *State v. Dewitt*, 811 N.W.2d 460, 467 (Iowa 2012). We consider evidence to be substantial "if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.*

After hearing all of the evidence, the jury decided the State proved the following elements of second-degree murder:

> 1. On or about the 15th day of May, 2011, Bobby Joe Snow struck a blow to James McElroy's face.
> 2. James McElroy died as a result of being struck in the face by the defendant.
> 3. The defendant acted with malice aforethought.

The court instructed the jury that malice aforethought means "a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time."

On appeal, Snow argues the State failed to prove he acted with malice aforethought. He suggests instead he may be guilty of voluntary manslaughter because he was acting "with a sudden violent and irresistible passion, resulting

from serious provocation" because of "the multiple blows struck by McElroy." *See* Iowa Code § 707.4. Alternatively, Snow argues he should have only been convicted of involuntary manslaughter because he acted recklessly and unintentionally caused McElroy's death. *Id.* § 707.5.

When we view the record in the light most favorable to the State, we find substantial evidence supports the jury's finding of malice aforethought. Snow was angry when he left the bar. In his interview with police, he suggested he was fed up with McElroy's "clan." *See State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003) (explaining evidence of "bad feelings or quarrels between the defendant and the victim are circumstances that may be used to support a finding of malice aforethought"). After a heated encounter with McElroy, who was on foot, Snow took the opportunity to drive away. But Snow quickly decided to come back. He parked, stepped out of his car, and struck a hard blow to McElroy's face—watching the intoxicated man fall to the pavement and start to jerk or shake. Then Snow drove off, boasting to others what he had done. *See State v. Berry*, 549 N.W.2d 316, 318 (Iowa Ct. App. 1996) (finding malice from defendant's conduct after the stabbing). A reasonable jury could find Snow had a fixed purpose to do harm to McElroy at the time of the deadly punch.

Snow further argues the State failed to offer sufficient proof to overcome his justification defense. Snow acknowledges this issue was not argued as part of the motion for judgment of acquittal, but he claims his counsel was ineffective for not doing so. To succeed on a claim of ineffective assistance, Snow must prove by a preponderance of the evidence that his trial counsel failed to perform

an essential duty and that failure prejudiced his case. *See Strickland v. Washington*, 488 U.S. 668, 687 (1984).

Snow cannot show he was prejudiced by his counsel's omission when moving for judgment of acquittal because the State presented ample evidence to counteract his justification defense. *See State v. Crone*, 545 N.W.2d 267, 273 (Iowa 1996) (rejecting claim trial counsel was ineffective for failing to challenge certain elements in motion for judgment of acquittal when record revealed sufficient evidence). A defendant cannot prevail in claiming reasonable force if the State proves any of the following elements: (1) the defendant started or continued the incident which resulted in injury, (2) an alternative course of action was available to the defendant, (3) the defendant did not believe he was in imminent danger and the use of force was not necessary, (4) the defendant did not have reasonable grounds for the belief, or (5) the force used was unreasonable. *State v. Shanahan*, 712 N.W.2d 121, 134 (Iowa 2006). Here, the State established Snow had available an alternative course of action—leaving the scene in his car. But instead Snow continued the incident by driving back to McElroy's location, exiting his vehicle, and punching McElroy in the face.

We find no basis to disturb the jury's guilty verdict.

**B. Motion for New Trial**

We next turn to Snow's claim concerning the weight of the evidence. He contends the district court applied the wrong legal standard in ruling on his motion for new trial. In his motion, Snow alleged under Iowa Rule of Criminal Procedure 2.24(2), "the facts and evidence of the case presented to the jury do

not constitute or prove elements necessary to convict the Defendant on the charge of Murder in the Second Degree."

The court denied the motion, stating on the record:

> The Court has carefully reviewed . . . the Motion for New Trial and the standards contained in the Iowa Rules of Criminal Procedure with respect to the same, and having done so, I find that . . . the Motion for New Trial should be denied at this time.

Rule 2.24(2)(b)(6) permits the court to grant a new trial "[w]hen the verdict is contrary to law or evidence." Contrary to evidence means contrary to the "weight of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). Snow asserts the district court did not apply the *Ellis* standard to decide if the greater weight of credible evidence supported his claim that he was acting in self-defense when he struck McElroy. The ruling at issue does not fall into the category of cases where the district court mistakenly uses a sufficiency-of-the-evidence standard in ruling on a new trial motion. *See State v. Root*, 801 N.W.2d 29, 31 (Iowa Ct. App. 2011). Instead, the district court did not share its reasons for upholding the verdict.

"When making a ruling on a motion for new trial, the trial court should state the reasons for its ruling." *State v. Maxwell*, 743 N.W.2d 185, 192 (Iowa 2008). But even when the district court does not provide reasons, an appellate court may affirm if the trial record reveals a proper basis for the court's ruling. *Id.* at 192–93. We find a proper basis for affirming here. The credible evidence regarding justification did not preponderate heavily against the jury's verdict. *See Nguyen v. State*, 707 N.W.2d 317, 327 (Iowa 2005) (explaining new trial should be granted on this ground only in exceptional cases). The State's witnesses

offered consistent testimony concerning Snow's actions that night and his encounters with McElroy. Even Snow's own testimony confirmed that after initially driving away from the conflict, Snow turned his car around and headed back toward McElroy. Snow recalled putting the car in park, getting out, grabbing McElroy by the front of the shirt, and hitting him in the chin. We agree with the district court's that the jury's determination of guilt was not contrary to the weight of the evidence.

### C. Prior Bad Acts Evidence

Snow's remaining claim concerns his attorney's handling of the motion in limine. Snow argues on appeal that counsel should have objected to testimony and tape recordings that discussed an incident that occurred a few weeks before McElroy's death, when Snow allegedly hit Hipshur in the face. Snow contends the evidence was inadmissible under Iowa Rule of Evidence 5.404(b). He recognizes the motion in limine originally sought to exclude the evidence, but counsel withdrew that request. Snow notes "[n]o explanation was offered for this change in strategy."

We seize on the word "strategy." Where the challenged actions of counsel implicate trial tactics or strategy, we often preserve the claim for postconviction-relief proceedings where counsel has an opportunity to fully explain his or her decisions. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). We find preservation is the best course here.

**AFFIRMED.**